FREDERICK A. SCHMIDT, INC., APPELLEE, v. BROCK, APPELLANT.

(No. 645—Decided April 13, 1953.)

*Messrs. Flynn, Py & Kruse* and *Mr. Raymond N. Watts*, for appellee.
*Messrs. Carpenter & Carpenter* and *Mr. Michael C. Lacinak*, for appellant.

DEEDS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Huron County.

The action was commenced in that court by the appellee, Frederick A. Schmidt, Inc., as plaintiff, against the appellant, Mrs. Bryan Brock, as defendant, to recover a sum alleged due the plaintiff, a real estate broker, on account of the sale of a two-family residence owned by the defendant and her husband. The parties will be referred to in this opinion as plaintiff and defendant, as they appeared in the Court of Common Pleas.

The case was tried to a jury upon the petition of the plaintiff and the answer of defendant, resulting in a verdict in favor of the plaintiff, following which motions for a judgment notwithstanding the verdict and for a new trial on behalf of the defendant were overruled and final judgment entered for the plaintiff, which judgment is now before this court for review

pursuant to notice of appeal on questions of law.

The pertinent allegations of the petition of the plaintiff are that the plaintiff is a duly licensed real estate broker engaged in business in Cincinnati, Ohio; that on and prior to April 13, 1949, the defendant was the owner of certain real property located at 1233 Beacon Street in the city of Cincinnati; and that on that date defendant listed such property with the plaintiff as sole agent to procure a purchaser therefor by virtue of a written agreement whereby plaintiff was given the exclusive agency for three months to sell said real estate for the sum of $18,900, for which sale plaintiff was entitled to a commission of 5 per cent of the selling price. A copy of the "selling agency contract" was attached to the petition, marked exhibit A, and made a part thereof.

Here it should be noted that plaintiff omitted any allegations referring to a 30-day extension period appearing in the "selling agency contract," but which will be considered later in this opinion.

The plaintiff alleged further in its petition that it secured a prospective purchaser for the property, that it was sold by the defendant for the sum of $17,500, and that defendant and the purchaser prevented the consummation of the agreement of sale until the expiration of the time limit under the listing contract, although the plaintiff was the procuring cause of the purchase of the property by the purchaser. Plaintiff prayed for a judgment for the amount of commission claimed due it by reason of the sale.

The answer of the defendant admitted that plaintiff was a duly licensed real estate broker in the city of Cincinnati, that defendant was the owner of the real estate described by the plaintiff, and that the contract attached to the petition of the plaintiff was executed as alleged.

Defendant denied that the property was sold to a prospective purchaser furnished by the plaintiff, and further alleged that defendant sold the property to a person after the expiration of plaintiff's selling contract for the sum of $17,500, and denied all other allegations of the petition.

Several assignments of error are relied upon by the defendant as grounds for a reversal of the judgment, including the refusal of the trial court to sustain the motion of defendant for a directed verdict, made at the close of the evidence. Nevertheless, in view of the conclusion which this court has reached after a consideration of all the evidence and the written contract existing between the parties it becomes unnecessary to consider separately the assignments of error.

The plaintiff has based its right to a recovery squarely upon the written "selling agency contract" attached as exhibit A and made a part of its petition. The terms of the contract are clear and unambiguous. Provisions of the contract having reference to price, dates fixing the time for expiration of the selling agency, and the specific obligations of the plaintiff as a broker are pertinent and decisive of the issues, in the light of the uncontradicted evidence as we consider it. The agency contract was prepared by plaintiff and executed by the parties at Cincinnati, Ohio, on April 13, 1949, and contained an introductory statement at the top of the printed form as follows:

"2864

"The printed and written contract on this page constitutes the entire agreement between the parties and no oral or verbal agreement or understanding shall bind either of them."

A provision then appears in the following language:

"I/we hereby authorize and employ you as my/our sole agent to procure a purchaser for the following

described real estate, situated in the city of Cincinnati, county of Hamilton, and state of Ohio and known as Anderson Township,—1233 Beacon St.''

The price at which the property was to be sold is fixed as follows: ''for the sum of eighteen thousand nine hundred dollars ($18,900.00).''

It is then expressly agreed, respecting the payment of a commission:

''In consideration of your efforts to procure a purchaser, I/we agree to pay you the rate of commission as established by the Cincinnati Real Estate Board, said commission to be paid when binding contract for the sale is executed, and further agree that you shall have the exclusive right to sell said real estate for a period of three months, and that you shall be entitled to your commission if the real estate is sold or exchanged by you, or the undersigned, or any other person, at any price acceptable to the undersigned, during the existence of this contract.''

What has been referred to as a 30-day grace period following the 3-month listing, is provided as follows in the contract:

''The sale or exchange of the real estate described above, to any person to whom the broker shall have offered the same during the term of this contract, if such sale or exchange is consummated within thirty days after its termination, shall be considered a sale effected by said broker and shall entitle him to the commission herein agreed to be paid.''

The agency relationship between the parties had come to an end pursuant to the terms of the contract on August 12 and, thereafter, a sale was consummated on August 15, 1949, under negotiations directly between the purchaser and the defendant, at a price substantially lower than had been contemplated under the terms of the brokerage agreement.

It is uncontradicted that the sale in question was

consummated on August 15, 1949, as evidenced by purchase contract and copy of warranty deed appearing in the record, marked as exhibits A and 1 respectively, each bearing the date of August 15, 1949.

We find no evidence of a substantive character in the record concerning either bad faith on the part of the defendant or any unjustifiable conduct by the defendant preventing a sale of the property to the purchaser prior to the date of the expiration of the agency contract. The evidence introduced by the plaintiff relating to the considerable efforts exerted by it and the conflict as to how and by whom the purchaser was procured, become immaterial as no effective result was accomplished by plaintiff before the expiration of its contract with the defendant.

The rule of law applicable to written contracts where the terms are clear and unequivocal is firmly established and has been stated clearly by the Supreme Court of Ohio in the case of *First National Bank of Van Wert* v. *Houtzer*, 96 Ohio St., 404, 407, 117 N. E., 383:

"The parties under the issues in this case are presumed to have intended to contract in the manner and form in which they did contract. They are presumed to have intended to have given to the language of the contract the ordinary and usual meaning given to such language.

"True, this is a suretyship contract, and the rule has been well established for many years that such shall be strictly construed in favor of the surety. But that does not warrant a court in reading into a contract something that is not there by act of the parties, whether that something be a word, phrase or clause, varying the terms of the contract, or in reading into the contract doubt and ambiguity where the meaning is perfectly clear.

"* * *

"The language of the first bond 'he or either or any of them' as well as the language of the second bond, 'he, they and it,' is so broad and comprehensive that it clearly includes not only the firm, but each member thereof as individuals, and it is quite manifest that the parties must have so understood it; at least the law presumes such understanding in the face of this simple and ordinary every-day language.

"The very foundations of business make it obligatory that all parties shall fully and faithfully carry out the terms and conditions of each contract according to its spirit and purpose as shown by the four corners of the contract."

The principles of law applicable to the right of compensation of an agent pursuant to an employment contract are stated in 2 Restatement of the Law of Agency, 1037, Section 445, as follows:

"Except where there is revocation in bad faith, in which case the rule stated in section 454 is applicable, an agent whose compensation is conditional upon the performance by him of specified services, or his accomplishment of a specified result, is not entitled to the agreed compensation unless he renders the specified services or achieves the result."

The conclusion reached by this court is that the Court of Common Pleas erred in overruling the motion by defendant for a directed verdict at the close of all the evidence and in not granting the motion of defendant for a judgment notwithstanding the verdict, for which errors the judgment is reversed and final judgment will be entered for the defendant.

*Judgment reversed.*

Fess and Conn, JJ., concur.