**BARNES GROUP, INC., Plaintiff,**

**v.**

**James E. O'BRIEN, Associated Supply Company and O'Brien Supply Company, Defendants.**

**No. S 84-229.**

United States District Court, N.D. Indiana, South Bend Division.

July 20, 1984.

---

**4.** Plaintiff's Memorandum in Opposition to Celotex's Motion for Summary Judgment at 3, fn. 3.

David R. Melton, South Bend, Ind., Arthur J. Schwab, Cail M.G. Foote, Pittsburgh, Pa., Barnes Group, Inc., Bristol, Conn., for plaintiff.

James W. Oberfell, South Bend, Ind., for defendants.

## MEMORANDUM and ORDER

ALLEN SHARP, Chief Judge.

This cause is before the Court on the request for injunctive relief by plaintiff, Barnes Group, Inc. Bowman Distribution division of Barnes Group, Inc. [Bowman] seeks preliminary injunctive relief enforcing the restrictive covenant contained in the sales agreement between defendant, James E. O'Brien [O'Brien] and Bowman. It further seeks preliminary injunctive relief prohibiting defendants, Associated Supply Company [Associated Supply] and O'Brien Supply Company [O'Brien Supply] from aiding in or accepting the profits of O'Brien's breach of his contractual obligations. For the reasons set forth below, the Court finds that plaintiff is entitled to a preliminary injunction.

### I.

O'Brien accepted employment with Bowman on March 5, 1951. On or about January 8, 1957, prior to and as an express condition of continuing employment, O'Brien signed a sales agent agreement. Again in 1959, he signed a revised sales agreement as a condition of continuing employment with Bowman. As a commissioned sales agent, O'Brien received some training in Bowman's business methods and product lines although the exact nature and value of this training is the subject of differing testimonial accounts. Bowman provided him with equipment such as price books, sales manuals, presentation books and other confidential information such as volume of sales to particular customers, prices at which products were sold to particular customers, and projected particularized needs of customers. Moreover, all this information was updated on a continual basis.

O'Brien prospered at Bowman. As a sales agent he was eminently successful. Mr. Edward J. France, General Manager of Bowman, testified at the preliminary injunction hearing that O'Brien was a very good salesman. In 1961, O'Brien became part-time District Manager. He assumed the position full time in 1966. In this capacity O'Brien was involved in the process of hiring Bowman sales agents and, thus, was familiar with the form and content of both sales agent agreements and supplemental agreements.

In 1973, O'Brien re-entered the Bowman sales force and, thereafter, on August 20, 1973, executed a supplemental agreement which explicitly incorporates by reference the 1959 sales agreement. Both agreements contained a restrictive covenant providing that for two years following O'Brien's termination from Bowman, he would not sell competing products to the same customers that he had made sales to on behalf of Bowman. The covenant reads in pertinent part:

> The Salesman agrees that [1] if he shall voluntarily leave the Company's employ hereunder, or [2] if he shall be discharged by the Company for just cause, he will not, for a period of two [2] years thereafter, sell or attempt to sell any products of the same or similar kind as those sold by the Company, to any of the customers to whom he made one or more sales for the Company within the last two years of his employment. The Salesman agrees that his promise herein made so to refrain from selling or attempting

to sell means that he will not, directly or indirectly, either as an individual on his own account or as a partner, employee, agent or salesman of or for any person, firm, association or corporation, or as an officer, director or stockholder of any closely-held corporation as hereinafter defined, engage in selling or attempting to sell any of said products to any of the customers hereinabove designated....

Also included in the agreement were provisions in which O'Brien promised to devote his best efforts to the sale of Bowman merchandise, refraining from competing with Bowman while working for the company as an agent[1] and to return Bowman's sales equipment upon the termination of his work for the company.[2]

The territory assigned to a Bowman salesman consisted of certain specified customers within a given geographic area. Exclusivity attached only to the customers assigned, not to the geographic area. Such restriction is set forth in the first paragraph of the 1959 sales agreement:

> The Company hereby appoints the Salesman of the Company's sales representative in its Territory No. *271–6. Said territory consists of certain specified or generally described accounts, which are hereby assigned to the Salesman, located in a defined geographical area.* Said accounts are set forth or described in a certain document on file in the Company's office, called "Territory Description," bearing the Salesman's name and territory number. Said Territory Description contains also a list of or

---

1. The duties provision of the sales agent agreement reads in pertinent part as follows:

   ... The Salesman agrees to devote his best efforts to the performance of his duties for the Company, to give proper time and attention to furthering the Company's business, to confine his activities to the territory assigned to him and to refrain from soliciting in or accepting orders from other territories, and to comply with all rules, regulations and instructions contained in the Sales Manual and the Official Bulletins issued by the Company. The Salesman further agrees that during his employment under this agreement he will not, either directly or indirectly, enter into or en-

   gage in any business which competes with the Company's business.

2. The selling equipment provision reads in selected part:

   ... The Salesman agrees, upon the termination of his employment hereunder, for any cause, at once to return said equipment to the Company [which return may be sent "express collect" from any point in the United States] and understands and agrees that all remittances owing to him from his Commission Account and his Reserve Account, although past due, may be withheld by the Company until such time as all of said equipment is returned to the Company.

description of accounts, if any, which, although within the aforesaid geographical area, are excluded from the Salesman's territory. *The accounts which are included in the Salesman's territory are hereinafter referred to as "territory."* If said Territory Description shall include any general classification[s] of accounts declared to be "Open to all salesmen," the accounts within such classification[s] shall not be included in the Salesman's territory unless and until so included by supplemental agreement. The aforesaid Territory Description is now in existence and is incorporated herein by reference and is hereby made a part of this agreement to the same extent as if fully rewritten herein. A copy of said Territory Description has been delivered to the Salesman who hereby acknowledges its receipt. [Emphasis added.]

The evidence establishes that a sales agent making sales regularly to specified customers within his geographic area had the exclusive right to any commissions from sales made to those customers. That exclusive right continued as long as the customer was assigned to a salesman. A sale made by any other sales agent to the assigned account would result in the commission being given to the agent to whom the specified account was assigned.

Initially, O'Brien's territory consisted of specified customers within certain counties in Northern Indiana. When he returned to the sales force as an agent in 1973, he was assigned fifteen [15] general classifications of customers within a geographic area encompassing eight Indiana counties.[3] The document describing the territory, the Acknowledgement of Territory Description signed by O'Brien in 1973, further listed six other sales agents who would be working in the same geographic territory as O'Brien.

Bowman utilized a multiple-pricing structure. It permitted a sales agent to quote a

range of prices on an item in order to enable such agent to compete successfully with other salesmen in the area. Thus, a Bowman sales agent calling upon the account of another Bowman salesman could quote a much lower price thereby creating havoc within the sales force and confusion in the mind of the customer. This was a recurring problem and O'Brien, too, was affected by it.

O'Brien formed Associated Supply in 1978 purportedly to service customers with products that he could not get through Bowman or could not sell competitively through Bowman. These items were often similar to and sometimes the same as the product sold by Bowman. Approximately five years ago, he changed the name to O'Brien Supply since he realized the name of the company at the time was Associated Spring and he did not want to trade on its name. O'Brien kept the Associated Supply name to buy merchandise from Bowman. Between March 1980 and March 1984, O'Brien sold $132,758.01 worth of products through O'Brien Supply Company. His post-termination sales amounted to $12,-296.66. Bowman calculated their loss on these sales to be $59,969.10.

In March 1984, a customer inquired of Bowman whether it was still in business since that customer was only receiving O'Brien Supply invoices. On March 19, 1984, O'Brien was given a choice of either ceasing his competitive activity through O'Brien Supply Company or being terminated [taken "off list"]. He chose to terminate his relationship with Bowman. By letter dated March 23, 1984, Bowman reminded O'Brien that under the restrictive covenant, he could not sell competing products to customers to which he had made one or more sales during his last two years with Bowman. Nevertheless, O'Brien continued to make sales to his Bowman customers, selling them products which were the same or similar to those sold by Bowman. He has further testified to his inten-

---

**3.** These counties included: Cass, Fulton, Kosciusko, Howard, Lake, Miami, Porter and Wabash.

tion of continuing to make such sales to his former Bowman customers.

Bowman filed a complaint and motion for preliminary injunction in this court on April 17, 1984 seeking preliminary and permanent injunctive relief from O'Brien's continuing breaches of his obligations under the restrictive covenant and damages for O'Brien's various breaches of his contractual duties. Defendants filed an answer and counterclaim on May 7, 1984, denying allegations of the complaint and raising the defenses that [1] O'Brien's promise to abide by the restrictive covenant was not supported by consideration; [2] O'Brien signed the 1973 supplemental agreement by mistake; and [3] Bowman breached the sales agent agreement either by assigning salesmen to geographic territories allegedly exclusively assigned to O'Brien, or by permitting and encouraging other Bowman agents to call on O'Brien's customers, thereby making injunctive relief inappropriate. A hearing on Bowman's motion was held on May 9, 1984 in South Bend, Indiana.[4] Jurisdiction of this Court is predicated upon diversity of citizenship, 28 U.S.C. § 1332[a]. This memorandum constitutes this Court's findings of fact and law for purposes of Fed.R.Civ.P. 52[a].

## II.

The standards which must be met for the issuance of a preliminary injunction are: [1] whether the plaintiff has at least a reasonable likelihood of success on the merits; [2] whether plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; [3] whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; and, [4] whether the granting of the preliminary injunction will disserve the public interest. *Syntex Opthalmics, Inc. v. Tsuetaki*, 701 F.2d 677, 681 [7th Cir.1983] citing *Machlett Laboratories, Inc. v. Techny Industries, Inc.*, 665 F.2d 795 [7th Cir.1981]. With these standards in mind, the court

now turns to the merits of the case and the question of the restrictive covenant.

The initial inquiry with respect to the restrictive covenant is the choice of law to govern the action. As a federal court sitting in Indiana, this Court is bound to look to the law of Indiana for choice of law. *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 [1941]; *Coldwell Banker & Co. v. Karlock*, 686 F.2d 596, 600 [7th Cir.1982]. Indiana choice of law principles dictate that residents may contract concerning the applicability of foreign law to their agreements. Thus, "in keeping with Indiana black letter law, ... the true test for determining the proper law governing a contract is the intent of the parties." *Sullivan v. Savin Business Machines Corp.*, 560 F.Supp. 938, 939 [N.D. Ind.1983] citing 6 I.L.E. Contracts § 2, n. 7 and cases cited thereat. The Bowman sales agreement provides that it is to be governed by the law of Ohio. This court is obligated to accept the intent of the parties unless the public policy interests of this state outweigh those of the state chosen by the parties involved. *South Bend Consumers Club, Inc. v. United Consumers Club, Inc.*, 572 F.Supp. 209, 212 [N.D.Ind. 1983]; RESTATEMENT [SECOND] of CONFLICT of LAWS § 187 [1971]. *See also Moll v. South Carolina Solar Systems, Inc.*, Ind.App., 419 N.E.2d 154, 162 [1981]. Therefore, it is incumbent upon the Court to examine the reasonableness of the Bowman covenant under both the law of Indiana and the law of Ohio.

Ohio courts have long recognized the need for restrictive covenants and have upheld them as a means for protecting the interests of an employer, particularly where, as here, the "business is built upon the confidence of its customers and the employee gains acquaintances and sells the customers by using the goodwill of the employer." *Briggs v. Butler*, 140 Ohio St. 499, 504, 45 N.E.2d 757, 762 [1942]. Ohio law establishes two requirements for the

---

4. The post-preliminary injunction hearing brief in support of plaintiff's motion was filed May

21, 1981. Defendant's brief in response was filed June 4, 1984.

enforcement of a restrictive covenant: [1] that it be ancillary to an employment agreement, and [2] that it be reasonable. *Id.* at 762. The reasonableness requirement is further defined by law. A restraint must be reasonable in three respects: [1] duration of time and scope; [2] necessary for the protection of the plaintiff; and [3] not unreasonably restrictive upon the rights of the employee. *Id.*

Standards for the enforcement of a restrictive covenant in Indiana are similar, if not identical. Although restrictive covenants in restraint of trade are not favored by the law, *Licocci v. Cardinal Associates, Inc.,* Ind., 445 N.E.2d 556, 561 [1983], they will be enforced where reasonable. *Donahue v. Permacel Tape Corporation,* 234 Ind. 398, 127 N.E.2d 235, 237 [1955]. A covenant will be deemed reasonable where [1] the restraint is reasonably necessary to protect the employer: [2] it is not unreasonably restrictive of an employee; and, [3] it is not against public policy. *Donahue,* 234 Ind. at 402, 127 N.E.2d at 239. Reasonableness is further determined by a consideration of duration, geographic area and interest sought to be protected. *4408, Inc. v. Losure,* 175 Ind.App. 658, 373 N.E.2d 899, 901 [1978].

Indiana courts have upheld specific time restrictions of two or more years. *See Leatherman v. Management Advisors, Inc.,* Ind., 448 N.E.2d 1048 [1983] [3 years]; *Seach v. Richards, Dieterle & Co.,* Ind.App., 439 N.E.2d 208 [1982] [3 years]; *Welcome Wagon v. Haschert,* 125 Ind.App. 503, 127 N.E.2d 103 [1955] [5 years]. The courts have also held as reasonable sales territory restrictions, *Grand Union Tea Co. v. Walker,* 208 Ind. 245, 195 N.E. 277, 279–80 [1935]; *4408, Inc.,* 175 Ind.App. at 661, 373 N.E.2d at 902, and more narrowly drawn restrictions referring to customers only. *Licocci,* 445 N.E.2d at 563; *Seach,* 439 N.E.2d at 213. Moreover, the Supreme Court of Indiana has held that customer lists, requirements and contacts constitute the confidential information and goodwill of a business and are, therefore, protectible property interests. *Donahue,* 234 Ind. at

403, 127 N.E.2d at 240; *Licocci,* 455 N.E.2d at 561–62.

Examining the Bowman covenant, the court finds that it meets the standards of reasonableness under the laws of both Ohio and Indiana. The covenant was included in, and was an integral part of, the sales agent agreement. The time limit of two years has been deemed reasonable by ample Ohio case law. *See Raimonde v. Van Vlerah,* 42 Ohio St.2d 21, 325 N.E.2d 544 [1975] [3 years]; *Extine v. Williamson Midwest, Inc.,* 176 Ohio St. 403, 200 N.E.2d 297 [1964] [2 years]. Likewise, the scope of the covenant, requiring sales agents to refrain from servicing former customers, has also been upheld under Ohio law. *Standard Oil Co. v. Landmark Farm Bureau Co-op,* 52 Ohio App.2d 225, 369 N.E.2d 785 [1976]; *Extine v. Williamson Midwest, Inc.,* 176 Ohio St. 403, 200 N.E.2d 297 [1964].

Moreover, the Bowman restrictive covenant is necessary to protect Bowman's proprietary interest in its customers, customer goodwill, sales and other confidential information. Because Bowman maintains no retail store or conducts no catalogue sales, it looks to its salesmen as its sole mode of customer contact. Testimony by Edward J. France has established that when a sales agent leaves Bowman and abides by the restrictive restriction covenant, Bowman generally retains ninety to one hundred percent of its business with the customers of that agent; when the covenant is violated, Bowman loses seventy to one hundred percent of its business with the accounts of that sales agent. The exodus of one salesman from the Bowman sales force may represent a small loss of business when compared to the income of the company as a whole but given the nature of Bowman's business structure and its dependancy on agent-customer relations, the loss of a single agent eats at the very core of Bowman's business interest. Each departing agent dilutes, to some extent, the vitality of the company.

Further, the restrictive covenant does not impose an undue hardship on O'Brien.

Though the loss of any income is indeed a misfortune to anyone of any age, the opportunity to earn a livelihood is not closed to O'Brien. The Bowman restrictive covenant bars O'Brien from selling to those Bowman customers to which he made one or more sales during his last two years with Bowman—approximately forty-three customers. No attempt is made to prevent him from calling on non-Bowman customers or the customers of other Bowman sales agents in Northern Indiana. In two years, he may renew his contacts with all his former clients. For all the reasons above, the Court finds the Bowman restrictive covenant reasonable and enforceable under the laws of both Indiana and Ohio.

### III.

■ O'Brien raises several defenses under the equitable doctrine of unclean hands which he contends precludes injunctive relief from this Court. O'Brien argues that the Bowman restrictive covenant is not enforceable in Indiana because it was executed several years after O'Brien commenced work for Bowman. He contends that under the law of Indiana the promise of continued employment is not sufficient consideration for such an agreement. However, the most recent pronouncement from the Supreme Court of Indiana states otherwise. In *Leatherman v. Management Advisors, Inc.*, Ind., 448 N.E.2d 1048 [1983], the court held that continued employment was sufficient consideration for a restrictive covenant. Leatherman was an insurance agent and pension consultant who entered into an employment relationship with Management Advisors. Approximately one year later, Leatherman signed another form of agreement and both agreements contained the restrictive covenant clauses. The Court of Appeals held that the second agreement was not supported by sufficient consideration and that, therefore, the restrictive covenant was unenforceable. Upon transfer, the Supreme Court of Indiana vacated the opinion of the Court of Appeals and held that the promise of continued employment made to Leatherman was sufficient consideration for his

promise not to pirate the clients of the company.

■ Moreover, when O'Brien returned to the sales force as an agent, he signed the 1973 supplemental agreement. In consideration for O'Brien entering into this supplemental agreement, Bowman agreed to place him back on the sales force, reissue Bowman's price and customer information and equipment and assign him specific Bowman customers as his territory. Hence, the defense of inadequate consideration must fail.

O'Brien strenuously argues that the restrictive covenant cannot be enforced against him because Bowman had breached its own agreement made under the contract. Specifically, O'Brien alleges that pursuant to the terms of his sales agreement, he was to be the exclusive sales representative within those defined areas. In contravention of that agreement, Bowman assigned many of its other representatives to the geographic area. Further, O'Brien contends that Bowman interfered directly with customers who, on the book of the company, were exclusively assigned to him.

■ O'Brien's claim that Bowman assigned "exclusive territories" is specious in light of the plain meaning of the 1959 sales agreement, the 1973 supplemental agreement, O'Brien's deposition testimony and his testimony before this Court at the preliminary injunction hearing. Pertinent portions of the 1959 sales agreement quoted above specifically state:

Said territory consists of certain specified or generally described accounts ... located in a defined geographical area. The accounts which are included in the Salesman's territory are hereinafter referred to as "territory."

Moreover, having served in managerial positions for thirteen years, O'Brien was aware that his territory was exclusive only as to accounts and not an exclusive geographical territory. O'Brien clearly and accurately explained Bowman's territorial structure at his deposition and at the pre-

liminary injunction hearing. This evidence clearly refutes any claim by O'Brien that he believed his territory to be exclusive in a geographical sense.

■ O'Brien's claim of interference with his accounts is more substantive and merits greater scrutiny. Both at his deposition and the injunction hearing O'Brien testified to several instances over the past six years in which other Bowman salesmen called upon his customers.[5] While the Court views such incidents as more than "merely unfortunate instances of confusion," such occurrences do not rise to the level of a breach of contract. First, the number of specific instances of interference in the record is small, approximately one half dozen. Second, though the Court is cognizant of the fact that damage under these circumstances cannot be equated in terms of numbers alone, the fact remains that with a single exception, at no time did another Bowman sales agent write an order or receive a commission as a result of a visit on O'Brien's customers. Even in the instance where an order was written and a sale made, the disputed J & L incident, the company, when advised of the details, credited O'Brien with the commission and reaffirmed the status of the customer as one of O'Brien's accounts. After continued visits by the offending agent, the company terminated him.

■ Moreover, it is well established that a party to a contract who with knowledge of facts which entitle him to rescind, treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect thereby waives his right to escape the obligation of the contract. *English v. National Casualty Co.*, 138 Ohio State 166, 34 N.E.2d 31 [1941]. *See also Meyers v. Hoops*, 12 Ohio Op.2d 481, 140 N.E.2d 65 [1955]. Incidents of which O'Brien has complained occur over approximately a six year period of time. Despite the alleged wrongful behavior of Bowman, O'Brien continued to work for Bowman through March 1984 when the activities of O'Brien Supply were brought to the attention of Bowman and Bowman gave O'Brien the option of remaining with the company, severing connections with O'Brien Supply or terminating his relationship with it.[6] He, therefore, waived any rights which a breach of contract might have created.

Finally, under the terms of the sales agreement an alleged breach is no defense to an action for enforcement of the restrictive covenant. The Bowman sales agent agreement in paragraph 6 provides:

> This covenant on the part of the Salesman is of the essence of this agreement; it shall be construed as independent of any other provision in this agreement, and the existence of any claim or cause of action of the Salesman against the Company, whether predicated on this agreement or otherwise, shall not constitute a defense to the enforcement by the Company of this covenant.

---

**5.** Specific instances referred to include incidents at: Piercton Equipment Company; McMahon & O'Connor Construction Company; R.R. Donnelly; Walsh Construction; Deichman Excavating; and Jones & Laughlin Steel Company. In the Walsh situation, O'Brien had made a presentation but had never written an order on the account when another Bowman sales agent made the first sale. Although such a sale would have been technically "legal" within the structure of Bowman sales procedures, O'Brien considered it a breach of etiquette as between salesmen. A similar situation arose at Deichman. O'Brien had made an initial presentation but the account was later assigned to a new trainee. In the R.R. Donnelly situation, O'Brien had made an initial sale through O'Brien Supply. Before he was able to place an order for Bowman, the company indicated that he could no longer call on industrial accounts in Kosciusko County.

**6.** O'Brien argues that he signed the 1973 supplemental agreement by mistake. It is difficult for the Court to believe that a person with working knowledge of Bowman forms and agreements and with such a strong intent to resist signing an agreement could be confused at the time of signing particularly. since O'Brien signed *three* documents in connection with the supplemental agreement at three distinct times. [O'Brien signed a receipt for the territorial description portion of the agreement on June 18, 1983, the supplemental agreement itself on August 20, 1973 and a receipt for an executed copy of the agreement on October 10, 1973.]

Ohio courts have stated that where the language in a written contract is clear and unambiguous the parties to the contract are presumed to have intended what was written. *Frederick A. Schmidt, Inc. v. Brock*, 97 Ohio App. 469, 127 N.E.2d 219 [1953]. While the courts of Ohio and Indiana have not been presented in a restrictive covenant case with the language similar to that in the Bowman sales agent agreement, the courts of Georgia have addressed this issue. In *Orkin Exterminating Company v. Gill*, 222 Ga. 760, 152 S.E.2d 411 [1966], the contract, using the same language as contained in O'Brien's Bowman sales agent agreement, provided that the restrictive covenants prohibiting competition and solicitation were severable and enforceable regardless of any defense. Defendant signed an employment contract in which he agreed not to engage in certain competitive activities for a period of two years. Defendant, who had begun working for a competitor in violation of his contract, argued that plaintiff wrongfully breached the contract by terminating defendant's position as manager-trainee and that plaintiff therefore had unclean hands. The Supreme Court of Georgia held that the trial court was bound to grant the injunction in that the failure of plaintiff to do equity did not preclude it from obtaining injunctive relief. *See also Orkin Exterminating Co. v. Harris*, 224 Ga. 759, 164 S.E.2d 727 [1968].

In *Barnes Group, Inc. v. Smith and Chamisa Enterprises, Inc.* No. 81–521–JB [D.N.M., filed May 11, 1982], the districtg court, in upholding the *same* Bowman provision, stated:

Severability of contract terms is determined from the contract itself and the contract is given the interpretation which effectuates the manifest intent of the parties. *Socony Mobil Oil Co. v. Humble Oil & Refining Co.*, 387 F.2d 155 [10th Cir.1967]; *Bird v. Computer Technology, Inc.*, 364 F.Supp. 1336 [S.D.N.Y. 1973]; *John v. United Advertising, Inc.*, 165 Colo. 193, 439 P.2d 53 [1968]; *O'Malley Investment & Realty Co. v. Trimble*, 5 Ariz.App. 10, 422 P.2d 740 [1967]. In

this case, there is a clear indication of the intent of the parties in the contract itself....

The court must give effect to the parties' intent. Therefore, the restrictive covenant is enforceable irrespective of the alleged breach of contract by the plaintiff.

This Court concurs with Judge Burciaga's conclusion. This covenant will be enforced in accord with the intent of the parties.

### IV.

The Court finds that the standards for an injunction have been met in this case. Bowman has a reasonable likelihood of success on the merits in that the restrictive covenant it seeks to enforce is narrowly drawn and is reasonable and enforceable under the laws of both Indiana and Ohio. As such, though a severe remedy, it does not foreclose to O'Brien opportunities through which to pursue a livelihood. Bowman, however, has no adequate remedy at law to counteract the effects of dissemination and wrongful appropriation of confidential trade information and the loss of its customer goodwill. Use of Bowman's confidential information and trade secrets imposes a sizeable obstacle to Bowman efforts to regain such customers. Finally, the public interest is not disserved by injunctive relief in this case. Public policy does not condemn a restrictive covenant as a restraint on trade if it is reasonable in duration, scope and the interest it seeks to protect and if it appears reasonably necessary to protect the goodwill of the employer. Thus, it is the order of this Court that a preliminary injunction should issue.

Accordingly, it is the order of this Court that a preliminary injunction issue enjoining the defendant, James E. O'Brien, acting as or through Associated Supply Company and O'Brien Supply Company or on behalf of any other entity or person, for a period of two years from March 19, 1984, from engaging directly or indirectly in the business of selling or attempting to sell for his account on behalf of others any products of the same or similar kind as those sold by

**464**

plaintiff to any of the customers to whom the defendant made one or more sales for the plaintiff within his last two years of employ by the plaintiff.

IT IS FURTHER ORDERED that the defendant, James E. O'Brien, be prohibited from using for himself or on behalf of others any confidential and trade secrets of plaintiff [including customer, product and price information]. All such information and trade secrets in the possession, custody, or control of the defendant shall be returned to plaintiff forthwith.

IT IS FURTHER ORDERED that defendants Associated Supply Company and O'Brien Supply Company be enjoined from using any valuable and confidential information and trade secrets of plaintiff [including customer, product and price information]. All such information and trade secrets in the possession, custody, or control of the defendants shall be returned to plaintiff forthwith.

IT IS FURTHER ORDERED that the injunction remain in force during the pendancy of this case or until further order of this Court. The injunction will issue upon entry of this order. SO ORDERED.