**O.K. SAND AND GRAVEL, INC., an Indiana corporation, Plaintiff,**

v.

**MARTIN MARIETTA CORPORATION, a Maryland corporation, Defendant.**

**No. IP 90–1051–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 28, 1992.

R. James George, Jr., John M. Harmon, F. Michael Lawrence, Graves, Dougherty, Hearon & Moody, Austin, Tex., for plaintiff.

G. Thomas Blankenship, Blankenship & Robbins, Donald E. Knebel, Lynn C. Tyler, Barnes & Thornburg, Indianapolis, Ind., for defendant.

BARKER, District Judge.

This matter is before the court to address Martin Marietta's motion to dismiss. Upon review of the record, this court GRANTS, in part, and DENIES, in part, that motion.

## I. Background

O.K. Sand and Gravel produces (not surprisingly) sand and gravel. The Martin Marietta Corporation sells (and produces) sand and gravel, as well as crushed stone and other aggregate-type material. In April 1984, the two companies signed a document titled "Letter of Intent Sales Agreement." The intent agreement provided in part:

Martin will solicit orders for sand and gravel with a range of sizes, specifications and quantities agreed upon by O.K., and at prices mutually agreeable to both parties.

In November 1984, O.K. Sand and Martin Marietta executed the Sales Agency Agreement, in which O.K. Sand formally appointed Martin Marietta as its "exclusive sales agent." The Sales Agency Agreement provided in part:

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties agree as follows:

1. *Appointment as Exclusive Agent.* O.K. appoints Martin as its exclusive sales agent to sell all aggregates, materials, products or goods excavated, produced or held by O.K. at the Facility.

2. *Duties of Martin.* Martin shall solicit all orders for the Products [at the set "List Prices"] and prepare all arrangements for the delivery of the Products including truck procurement, scheduling and expediting.

3. *Duties of O.K.* O.K. shall keep a minimum inventory of Products at the Facility throughout the term of this Agreement, or any extensions thereof, . . . and, furthermore, shall excavate and produce Products at such frequency and in such volume to supply the reasonable requirements of its customers.

The Sales Agency Agreement automatically renewed year to year, absent a timely (90 day advance) written notice of cancellation.

In 1984, when Martin Marietta began selling O.K. Sand's products, Martin Marietta sent O.K. Sand (at the end of every month) a monthly remittance check and a general report of how much total sand and gravel it had sold that month. Martin Marietta did not, however, disclose to O.K. Sand how much it was charging for O.K. Sand products. In 1985, O.K. Sand began asking Martin Marietta how much it was charging for O.K. Sand products, but Martin Marietta responded by either evading the question or telling O.K. Sand "it was none of their business what prices Martin Marietta obtained for O.K.'s products." O.K. Sand's First Amended Complaint, ¶ 20.

In 1986, Martin Marietta initiated the practice of changing the set "List Prices" for O.K. Sand products without O.K. Sand's approval, notifying O.K. Sand of the price changes after the fact "usually annually, by telephone and/or by written communications . . . [although] some of the Products were changed by Martin Marietta . . . more often than annually." *Id.* at ¶ 15. However, in 1987, apparently in response to O.K. Sand's continued requests for price information, Martin Marietta began providing O.K. Sand monthly "Analysis by Product" documents in 1987. These documents listed the average prices Martin Marietta had charged for O.K. Sand's products in the previous month, but the documents did not disclose what specific prices Martin Marietta had charged individual customers. In January 1989, O.K. Sand notified Martin Marietta that it wanted to cancel the agency agreement.

Approximately four months later, O.K. Sand filed a complaint (as amended) against Martin Marietta claiming breach of contract, fraud, conversion, and breach of fiduciary duty.[1] In sum, O.K. Sand alleged that Martin Marietta violated the agency agreement by not disclosing what prices it was charging, by selling O.K. Sand product at prices below the mutually agreed-upon "List Prices," and by secretly purchasing O.K. Sand's products for itself (after which it mixed-in its own product and resold the sand-mix at a higher price.) In response, Martin Marietta filed a counterclaim alleging that it was O.K. Sand who breached the Sales Agency Agreement and that O.K. Sand had violated the Sherman and Clayton Acts. *See* 15 U.S.C. §§ 1, 2, and 14.

## II. Discussion

### Waiver, Estoppel, Ratification and Acquiescence

Martin Marietta moves to dismiss all claims on the basis that since O.K. Sand knew that Martin Marietta had breached one fiduciary duty (by failing to disclose pricing information), yet allowed the contract to renew year after year, O.K. Sand acquiesced, ratified, waived, and is equitably estopped from asserting any breach of fiduciary duty claim.

■ Waiver[2] is an intentional relinquishment of a known right. *Ogle v. Wright,* 172 Ind.App. 309, 360 N.E.2d 240 (1977); *Lafayette Beverage Distributors, Inc. v. Anheuser–Busch, Inc.,* 545 F.Supp. 1137, 1149 (N.D.Ind.1982). Mere silence, acquiescence, or inactivity does not constitute waiver unless the waiving party had a duty to speak or act. *Lafayette Beverage Distributors, Inc. v. Anheuser–Busch, Inc.,* 545 F.Supp. at 1149.

■ Estoppel, as compared to waiver, focuses not on intent, but on the effect of one's conduct. *Saverslak v. Davis–Cleaver Produce Co.,* 606 F.2d 208, 213 (7th Cir.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980). Estoppel arises when one's conduct (not manifested intent) misleads another to believe that a right will not be enforced and causes the other party to act to his detriment. *Id.* Indiana follows the general rule that "si-

---

1. In Count I of O.K. Sand's six-count First Amended Complaint, O.K. Sand alleged that Martin Marietta breached the agency agreement by selling O.K. Sand's products below the agreed-upon "List Prices" and by covertly "transferring" O.K. Sand's products to itself. In Count II, O.K. Sand alleged that Martin Marietta breached the agency agreement by quoting prices below agreed-upon "List Prices." In Count III, O.K. Sand alleged that Martin Marietta breached fiduciary duties by quoting and selling O.K. Sand's products below agreed-upon "List Prices" and by failing to disclose pricing information. In Count IV, O.K. Sand alleged that the aforesaid breaches were "so pervasive and blatant as to constitute a failure of consideration." In Count V, O.K. Sand alleged that Martin Marietta committed fraud by failing to provide information about pricing, by covertly transferring to itself O.K. Sand's products, and by concealing facts relating to the "subject and matter of Martin Marietta's agency and the agency agreement." In Count VI, O.K. Sand alleged that the secret transfers constituted civil and criminal conversion. And in Count VII, O.K. Sand alleged that Martin Marietta breached its fiduciary duty by selling O.K. Sand products at prices below agreed-upon "List Prices," by failing to disclose pricing information, by failing to disclose its financial interest in the covert transfers, and by not using its best efforts "to carry out its duties to market and sell O.K.'s Products under the Agency Agreement."

2. Martin Marietta argues that a separate "doctrine of ratification" bars O.K. Sand's claims, citing *Barnes Group, Inc. v. O'Brien,* 591 F.Supp. 454, 462 (N.D.Ind.1984). Martin Marietta argues, "Courts applying Indiana Law have applied the doctrine of ratification where a party to a contract, with knowledge of facts that entitle him to rescind, treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect." Martin Marietta's Motion to Dismiss the First Amended Complaint, p. 7; *see Barnes Group, Inc. v. O'Brien,* 591 F.Supp. at 462 (N.D.Ind. 1984) (citing *English v. National Casualty Co.,* 138 Ohio St. 166, 34 N.E.2d 31 (1941). However, a careful examination of *Barnes Group,* and the (Ohio) cases cited therein, reveals that the "doctrine of ratification" is not a separate doctrine at all, but simply another name for and application of waiver. *English v. National Casualty Co.,* 34 N.E.2d at 33–34; *see Barnes Group, Inc. v. O'Brien,* 591 F.Supp. at 462 ("one who treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect thereby waives his right to escape the obligation of the contract").

lence and acquiescence,[3] when good faith requires a person to speak or act, will satisfy the first element of equitable estoppel." *Warner v. Riddell Nat. Bank,* 482 N.E.2d 772, 775 (Ind.Ct.App.1985).[4] "For silence to give rise to equitable estoppel, there must not only be an opportunity to speak, but an imperative duty to do so." *Erie–Haven, Inc. v. First Church of Christ,* 155 Ind.App. 283, 292 N.E.2d 837, 842 (1973).

◼ Martin Marietta's claims of waiver and estoppel both rest on the premise that once O.K. Sand discovered that Martin Marietta was refusing to provide pricing information, O.K. Sand had an affirmative duty to speak or act to mitigate its losses. However, Martin Marietta has glossed-over the fact that once O.K. Sand recognized that Martin Marietta was not disclosing pricing information, O.K. Sand insisted that Martin Marietta comply with the agency agreement and provide that information. (Recall that when confronted with this request, Martin Marietta replied that this information "was none of [O.K. Sand's] business.") The facts as alleged in the complaint do not demonstrate that O.K. Sand waived its right to be informed of pricing information, nor would O.K. Sand's repeated requests for pricing information reasonably lead Martin Marietta to conclude that O.K. Sand would be estopped from pursuing its rights under the agency agreement.

◼ Even if O.K. Sand had not acted or spoken in the face of Martin Marietta's initial breach, O.K. Sand had no duty to mitigate damages based on Martin Mariet-ta's failure to provide pricing information. O.K. Sand knew that Martin Marietta was not providing pricing information as early as 1984, but that fact alone would not necessarily lead O.K. Sand to the conclusion that Martin Marietta was breaching other fiduciary duties.[5] O.K. Sand had no actual or constructive knowledge that Martin Marietta was committing fraud or quoting and charging unauthorized prices, nor is it apparent from the complaint that O.K. Sand was negligent in acquiring such knowledge. *See Hammond v. Welsh,* 224 Ind. 349, 67 N.E.2d 390, 393 (1946) ("To have estoppel by acquiescence the person to be estopped must have had knowledge of the facts."); *Lafayette v. Keen,* 113 Ind. App. 552, 48 N.E.2d 63, 70 (1943). O.K. Sand tried (repeatedly) to get pricing information from Martin Marietta, and Martin Marietta cannot rely on its refusal to provide that information to establish estoppel or waiver. *Rushville Nat. Bank v. State Life Ins. Co.,* 210 Ind. 492, 1 N.E.2d 445, 449 (1936).

## Statute of Limitations

Martin Marietta claims that the nature of the harm alleged in Counts I–V is breach of fiduciary duty, and that those breaches occurred more than two years prior to the filing of this action. Martin Marietta thus moves to dismiss Counts I–V claiming that breach of fiduciary duty claims—like breach of trust, breach of bailment, and legal malpractice claims—are subject to Indiana's two-year statute of limitations for "injur[ies] to personal property." *See* IND.CODE § 34–1–2–2(1); *see also White-*

---

3. Acquiescence is "a release or an abandonment of one's rights if, having rights, he stands by and sees another dealing with his property, in a manner inconsistent with such rights, and makes no objection while the act is in progress." *Board of Comm'rs v. Plotner,* 149 Ind. 116, 48 N.E. 635 (1897).

4. Contrary to Martin Marietta's assertion that acquiescence, like ratification, is an independent equitable remedy, acquiescence is an alternate first element of equitable estoppel. *Warner v. Riddell Nat. Bank,* 482 N.E.2d at 775. We therefore consider acquiescence in the context of equitable estoppel, but not as a separate doctrine. *Id.*

5. Indeed, the Seventh Circuit has rejected this argument in finding "falsus in uno, falsus in omnibus," an improper jury instruction. *United States v. Monzon,* 869 F.2d 338, 346 (7th Cir. 1989), *cert. denied,* 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). As noted in *Monzon,* Judge Friendly, speaking for the Second Circuit, rejected the argument of false in one thing, false in everything, on the basis that the concept is simply inconsistent with life's experiences. *United States v. Weinstein,* 452 F.2d 704, 713 (2nd Cir.1971) *cert. denied,* 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972) (Friendly, J.)).

*house v. Quinn,* 477 N.E.2d 270 (Ind.1985), *Mack v. American Fletcher Nat. Bank & Trust Co.,* 510 N.E.2d 725 (Ind.Ct.App. 1987); *French v. Hickman Moving & Storage,* 400 N.E.2d 1384 (Ind.Ct.App.1980).

O.K. Sand responds by asserting, "O.K. seeks damages for breach of contract under each of [Counts I–IV]. Thus, for limitations purposes, these actions are governed by the ten-year Indiana statute of limitations applicable to written contracts."[6] O.K. Sand further asserts that Count V alleges fraud and is subject to Indiana's six-year statute of limitations for fraud actions.

■ In Indiana, the applicable statute of limitations "should be ascertained by reference to the nature of the harm alleged rather than by reference to theories of recovery. In other words, the applicable statute of limitations is ascertained by identifying the nature or substance of the cause of action and not by the form of the pleadings." *Whitehouse v. Quinn,* 477 N.E.2d 270, 273 (Ind.1985); *accord French v. Hickman Moving & Storage,* 400 N.E.2d 1384, 1390 (Ind.Ct.App.1980).

> In short, though parties confronted with a limitations problem often attempt ... to evade such difficulties by reliance upon pleading technicalities, the courts have consistently rebuffed these efforts in favor of substantive analysis. Particularly in view of the heightened emphasis on substance and the disregard of mere form which the Trial Rules demand, it is clear that such formalistic pleading arguments no longer merit serious attention.

*Shideler v. Dwyer,* 275 Ind. 270, 417 N.E.2d 281, 286 (1981).

■ The purpose of contract law is to ascertain the intent of the parties, to find and enforce a contract and leave the parties where it finds them. *First Federal Sav. Bank v. Key Markets, Inc.,* 559 N.E.2d 600, 604 (1990). Courts attempt to determine the intent of the parties at the time a contract is formed "as disclosed by the language used to express their rights and duties." *Id.*

■ However, in limited circumstances, such as when a contract establishes or codifies an agency relationship, courts impute fiduciary obligations. *Id.; see Olympia Hotels Corp. v. Johnson Wax Dev. Corp.,* 908 F.2d 1363, 1374 (7th Cir. 1990); *Union Miniere, S.A. v. Parday Corp.,* 521 N.E.2d 700, 703 (Ind.Ct.App. 1988). In such circumstances, courts require the party with a fiduciary duty to act with loyalty, candor, and honesty, in short, with "utmost good faith." *Sanders v. Townsend,* 582 N.E.2d 355, 358 (Ind.1991); *W & W Equipment Co. v. Mink,* 568 N.E.2d 564, 573 (Ind.Ct.App.1991). "A fiduciary, unlike an ordinary contract promisor, undertakes to treat the affairs of the promisee as if they were the promisor's own affairs. That is the practical content of all that high falutin' talk of utmost good faith and loyalty, full disclosure, the punctilio of an honor most sensitive, etc." *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.,* 908 F.2d 1363, 1373 (7th Cir.1990).

■ The Sales Agency Agreement provided that Martin Marietta would sell O.K. Sand's product for a commission and that O.K. Sand would let Martin Marietta be the exclusive sales agent of its products.[7] However, O.K. Sand alleged in Counts I–IV not that Martin Marietta breached the specifics of the agency agreement (i.e., that Martin Marietta failed to sell O.K. Sand's product), but that Martin Marietta breached the agreement by not conforming to the implied fiduciary duties that sprang from the agency relationship; O.K. Sand claimed that Martin Marietta failed to act openly, honestly, fairly, and with good faith cooperation. *See Whitehouse v. Quinn,* 477

---

6. O.K. Sand characterizes its claims as breaches of contract, despite its earlier contention, that "as O.K.'s exclusive agent pursuant to a written contract, all or substantially all of Martin Marietta's breaches of contract in this case constitute breaches of fiduciary duties owed to O.K." O.K. Sand's First Amended Complaint, ¶ 77.

7. The "Sales Agency Agreement" contains no express contractual requirement that Martin Marietta disclose specific pricing information or refrain from purchasing O.K. Sand products for its own use.

N.E.2d at 274. O.K. Sand's claims go to the breach of the fiduciary, not contractual, elements of the "Sales Agency Agreement," that part which required Martin Marietta to deal in utmost good faith, candor, and honesty.

The nature of the harm alleged in Counts I–IV thus concerns breaches of that codified fiduciary relationship, that "high falutin' talk of utmost good faith." Notwithstanding the form of the pleadings, Counts I–IV are claims for breach of fiduciary duty, see *Union Miniere, S.A. v. Parday Corp.*, 521 N.E.2d 700, 703 (Ind.Ct.App. 1988); see *Crum v. Avco Financial Services, Inc.*, 552 N.E.2d 823, 829 (Ind.Ct.App. 1990), and present the situation foreclosed by the Indiana Supreme Court in *Whitehouse v. Quinn* and *Shideler v. Dwyer;* "claims for breach of contract in the fiduciary setting." See *Kaken Pharmaceutical Co. v. Eli Lilly and Co.*, 737 F.Supp. 510 (S.D.Ind.1989) (applying *Mack v. American Fletcher Nat. Bank*, 510 N.E.2d at 738–39, to a breach of trust claim); see *Federal Deposit Ins. Corp. v. Greenwood*, 739 F.Supp. 450, 452 (C.D.Ill.1989) (citing *Mack v. American Fletcher Nat. Bank*, 510 N.E.2d at 738–39). Counts I–IV are therefore subject to Indiana's two-year statute of limitations for "injur[ies] to personal property." *Whitehouse v. Quinn, supra; Shideler v. Dwyer, supra; Mack v. American Fletcher Nat. Bank, supra.*

▇▇ Like Counts I–IV, Count V is also a breach of fiduciary duty claim; a fraud claim in a fiduciary setting. O.K. Sand pleaded in Count V that Martin Marietta had a "duty to disclose to O.K. all material facts relating to the subject matter of its agency and the Agency Agreement," and therefore, "Count V at a minimum states a claim for constructive fraud by O.K.'s fiduciary, Martin Marietta." However, similar to Martin Marietta's breach of contract claims, the nature and substance of Count V is in tort, and Count V is also subject to Indiana's two-year statute of limitations for "injur[ies] to personal property." *Whitehouse v. Quinn*, 477 N.E.2d 270 (Ind. 1985); *Kaken Pharmaceutical Co. v. Eli Lilly and Co.*, 737 F.Supp. 510 (S.D.Ind. 1989).

However, our analysis does not end here, for O.K. Sand claims that Counts I–V survive a two-year statute of limitations because Martin Marietta fraudulently concealed material facts, that the doctrine of fraudulent concealment estops Martin Marietta from invoking a statute of limitations affirmative defense.

▇▇ Fraudulent concealment "operates as an equitable doctrine to estop a defendant from asserting a statute of limitations when he has, either by deception or by a violation of a duty, concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action." *Malachowski v. Bank One, Indianapolis*, 570 N.E.2d 65, 68 (Ind. Ct.App.1991); accord *Keesling v. Baker & Daniels*, 571 N.E.2d 562, 565 (Ind.Ct.App. 1991). "Fraudulent concealment can arise from … a failure to disclose material information when a fiduciary or confidential relationship exists." *Keesling v. Baker & Daniels*, 571 N.E.2d at 565.

▇▇ Fraudulent concealment does not trigger the commencement of a new statute of limitations period, but creates an equitable exception. *Burks v. Rushmore*, 534 N.E.2d 1101 (Ind.1989). To benefit from fraudulent concealment, "a plaintiff must exercise due diligence in the filing of an action after the equitable grounds cease to operate as a valid basis for inducing the plaintiff's delay." *Id.* at 1105. However, whether O.K. Sand is entitled to invoke fraudulent concealment to toll a two-year statute of limitations is an issue this court cannot resolve at this juncture. What O.K. Sand knew about the alleged breaches of fiduciary duty, when it discovered (or should have discovered) those breaches based on the available information, and whether O.K. Sand filed this action within a reasonable time after discovering the alleged breaches, involve facts and issues not fully developed in the present record, and accordingly, this court reserves ruling on whether and to what extent O.K. Sand is entitled to rely on fraudulent concealment, with one exception.

■ O.K. Sand's allegation concerning whether Martin Marietta breached its fiduciary duty by not disclosing the pricing information is clearly not tolled by fraudulent concealment. O.K. Sand concedes that it knew Martin Marietta had not disclosed pricing information as early as April 1984, and the claim that Martin Marietta failed to disclose pricing information is thus subject to Indiana's two-year statute of limitations. That claim accordingly must be dismissed.

### Duplicative Count

O.K. Sand alleged in Count II that the unauthorized quotation of O.K. Sand products was "a producing and/or proximate cause of actual damages to O.K. far in excess of the minimum jurisdictional limits of this court."

Martin Marietta moves to dismiss Count II on the basis of duplicity. Specifically, Martin Marietta claims that O.K. Sand failed to allege damages from the quotation of unauthorized prices in Count II, and that O.K. Sand "has [already] asserted a claim for unauthorized sales in Count I; Count II serves no purpose and should be dismissed."

Count II sets forth that O.K. Sand was independently injured by the unauthorized quotations, that Martin Marietta used O.K. Sand products as a "loss leader" while increasing its own customer base. Count II thus states a claim separate from Count I (which asserts injuries from unauthorized sales), and accordingly, Martin Marietta's motion to dismiss Count II based on duplicity is denied.

### Failure to Allege Reliance in Count V

Martin Marietta moves to dismiss Count V on the basis that its open refusal to provide the requested pricing information "simply cannot constitute fraud because any claimed reliance is unreasonable, as a matter of law;" that for O.K. Sand to believe it still had a fiduciary relationship with Martin Marietta is "utterly implausible" and "preposterous." *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1110 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985);

*Plymale v. Upright*, 419 N.E.2d 756 (Ind. Ct.App.1981).

■ "A breach of a legal or equitable duty within the context of a fiduciary relationship may give rise to a cause of action for constructive fraud." *Sanders v. Townsend*, 582 N.E.2d 355, 358 (Ind.1991). Unlike actual fraud, intent to deceive is not an element of constructive fraud; "instead, the law infers fraud from the relationship of the parties and the circumstances which surround them." *Id.* "Once it is established that one with a fiduciary duty has attempted to benefit from a questioned transaction, the law presumes fraud." *W & W Equipment Co. v. Mink*, 568 N.E.2d 564, 573 (Ind.Ct.App.1991) (citing *Dotlich v. Dotlich*, 475 N.E.2d 331, 342 (Ind.Ct.App. 1985)).

■ O.K. Sand claimed in Count V that it relied to its detriment on the fiduciary relationship, notwithstanding Martin Marietta's evasive statements and failure to provide pricing information. As previously discussed, it is not "preposterous" to believe that although Martin Marietta failed to comply with one implied duty, it is still complying with others. Martin Marietta's reliance on *Car Carriers, Inc. v. Ford Motor Co.* is therefore misplaced. O.K. Sand has sufficiently stated and supported a claim of constructive fraud, and Martin Marietta's claim that O.K. Sand's reliance was unreasonable as a matter of law is without merit. *See Sauzer–Johnsen v. Sauzer*, 544 N.E.2d 564, 567–68 (Ind.Ct. App.1989).

### Conversion: O.K. Sand's Failure to Make a Demand for Return

Martin Marietta moves to dismiss Count VI (the conversion claim) on the basis that O.K. Sand failed to plead that it made an unqualified demand for return, citing *Coffel v. Perry*, 452 N.E.2d 1066, 1069 (Ind.Ct. App.1983) and *THQ Venture v. SW, Inc.*, 444 N.E.2d 335, 339 (Ind.Ct.App.1983).

"Where the initial possession is lawful, [civil] conversion occurs only after an unqualified demand for return." *Coffel v. Perry*, 452 N.E.2d at 1069. However, when "a party clearly converts property to

his own use, no demand is necessary." *French v. Hickman Moving & Storage,* 400 N.E.2d at 1389 (citations omitted).

■ Count VI, if not O.K. Sand's entire complaint, is based on the contention that Martin Marietta took lawful control and possession of O.K. Sand's product and acted in a way inconsistent with its fiduciary duties.[8] The failure to allege an unqualified demand for return (or "some other act" to put Martin Marietta on notice that "control [was] no longer authorized," *see Lesher v. Baltimore Football Club,* 496 N.E.2d 785 (Ind.Ct.App.1986), *aff'd,* 512 N.E.2d 156 (Ind.1987)) is fatal to a claim for civil conversion.

O.K. Sand argues, however, that an unqualified demand for return was unnecessary since such a gesture would have been futile. Although "equity should not and will not require the performance of a useless formality," *Merchants Nat. Bank & Trust Co. v. H.L.C. Enterprises, Inc.,* 441 N.E.2d 509, 514 (Ind.Ct.App.1982), a conversion of property into cash—where it is the value of the property/commodity rather than the property itself at issue—does not make a demand for return futile. *Lesher v. Baltimore Football Club,* 496 N.E.2d at 791–92 (conversion of check to cash does not negate the need to make a demand for return). Rather, a demand for return serves the primary purpose of allowing the defendant to return the commodity (or its value) "before being required to submit to unnecessary litigation." *Runnemede Owners, Inc. v. Crest Mortg. Corp.,* 861 F.2d 1053 (7th Cir.1988) (applying Illinois' conversion law). A demand for return would not have been futile, and Count VI, to the extent it alleges civil conversion, is dismissed.

■ To plead criminal conversion, on the other hand, a plaintiff need not state that it made a demand for return. *See Coffel v. Perry,* 452 N.E.2d at 1068–69. "[T]he elements necessary to establish conversion are those found in the criminal statute. As previously stated, criminal conversion occurs when a person knowing-

ly or intentionally exerts unauthorized control over another person's property. [IND. CODE §] 35–43–4–3. While a demand for return may be evidence as to the intent element, it is not itself an element of criminal conversion." *Lambert v. Yellowbird, Inc.,* 496 N.E.2d 406, 408 (Ind.Ct.App.1986); *accord DBC Capital Fund, Inc. v. Snodgrass,* 551 N.E.2d 475, 478 (Ind.Ct.App. 1990). Count VI thus sufficiently states a claim for criminal conversion, and that part of Count VI remains intact.

### III. Conclusion

Accordingly, this court denies Martin Marietta's motion to dismiss all claims based on waiver, estoppel, acquiescence, and ratification. We deny the motion to dismiss Count II based on duplicity, and deny the motion to dismiss Count V based on a failure to allege reasonable reliance. This court denies Martin Marietta's motion to dismiss Count VI based on a failure to state a claim of criminal conversion, but grants Martin Marietta's motion to dismiss that part of Count VI that alleged civil conversion. We grant Martin Marietta's motion to apply Indiana's two-year statute of limitations to Counts I–V, but have withheld a final ruling regarding whether that statute of limitations is tolled by fraudulent concealment, with one exception: The claim that Martin Marietta breached a fiduciary duty by failing to provide pricing information is not estopped by application of the doctrine of fraudulent concealment, thus that claim is barred under Indiana's two-year statute of limitations, and warranting its dismissal.

It is so ORDERED.

---

8. The Sales Agency Agreement provided that Martin Marietta shall "prepare all arrangements for the delivery of the Products including truck procurement, scheduling and expediting."