# FLINT & WALLING MANUFACTURING COMPANY
## *v.* BECKETT.

[No. 20,877. Filed December 18, 1906.]

1. TORTS.—*Contracts.—Breach.—Action.*—A person engaged in a private enterprise whose only relationship with plaintiff grows out of a contract, may be liable in tort for damage committed in the execution of the work of carrying out such contract. p. 498.

2. SAME.—*Contracts.—Breach of Duties under.*—The breach of a contractual duty to use care in reference to another's property constitutes a tort the same as the breach of a legally imposed duty apart from contract. ·p. 498.·

3. SAME. — *Negligence.—Contracts.—Due Care.—Action.—Case. —Assumpsit.*—Where through contractual relations defendant enters upon a work attended with risk to the person or property of the plaintiff, a failure by defendant to exercise ordinary care therein entitles the plaintiff to an action on the case or in assumpsit at his election. p. 498.

4. TORTS.—*Negligence.—Contracts.—Action.*—A breach of a contract, unattended by any negligence, does not give rise to an action in tort.  p. 498.

5. SAME. — *Negligence. — Contracts.—Breach.—Action.—Recovery.—Election.*—Plaintiff may elect to sue in tort or on contract for a negligent breach of contract, but he cannot have two compensations for the same loss.  p. 499.

6. SAME.—*Assumpsit.—Origin of.*—The action of assumpsit historically developed from the enforcement of liability in tort.  p. 499.

7. NEGLIGENCE.—*Due Care.*—Where damage results to plaintiff by reason of defendant's failure to exercise due care in any situation, an action in tort for the recovery of such damage lies on behalf of plaintiff.  p. 499.

8. SAME.—*Erecting Windmill.—Dangerous Character.—Notice.*—Defendant company, which contracts to erect a windmill on plaintiff's barn, is liable for injuries caused by its failure to use ordinary care in fastening such windmill firmly, thus causing it to fall on plaintiff's barn to his damage, the defendant being chargeable with notice of the danger resulting from its negligence.  p. 500.

9. SAME.—*Erecting Windmill.—Duty of Plaintiff to Examine.—Contracts.*—Where plaintiff sustained damages because of defendant company's negligence in performing its contract safely and securely to erect a windmill on plaintiff's barn, plaintiff was under no duty, as to defendant, to inspect such windmill to determine its safety.  p. 501.

10. SAME.—*Proximate Cause.—Intervening Agent.*—Where the proximate result of defendant's negligence is damage to the plaintiff, the defendant is liable provided the line of causation is not broken by some intervening responsible agent.  p. 501.

11. SAME.—*Selling Dangerous Articles.—Liability.—Intervening Agent.*—One who knowingly sells an article intrinsically dangerous to person or property, concealing the fact of its dangerous character, is liable to any person, who, without the fault of himself or other person sufficient to break the line of causation, is injured thereby.  p. 501.

12. PLEADING. — *Complaint. — Negligence. — Erection of Windmill.*—A complaint showing that defendant negligently failed securely to fasten the windmill, which defendant had contracted to erect, to the tower of plaintiff's barn, thereby causing damage to plaintiff, need not show that the supports to such mill were defective.  p. 502.

13. NEGLIGENCE.—*Contributory.—Erection of Windmill.—Failure to Inspect.—Contracts.*—The plaintiff is not guilty of contributory negligence for failing to inspect a windmill which de-

fendant had contracted to erect in a safe and secure manner and which it had negligently erected to plaintiff's damage. p. 502.

14. PLEADING.—*Complaint.—Torts.—Contracts.—Consideration.— ᶜ· Inducement.*—While the averment of the consideration of a contract in a complaint.for misfeasance or malfeasance is an uncontrolling mark of an action *ex contractu,* still, if the contract is set out merely as a matter of inducement, the complaint may be regarded as in tort for the violation of a common-law duty.   p. 502.

15. SAME. — *Code. — Complaint. — Facts. — Torts.—Contracts.*— Under code pleading the plaintiff in a case of tort may properly set out the contract with defendant as constituting the underlying facts from which the violated duty springs, instead of alleging the undertaking in general terms.   p. 503.

16. SAME. — *Complaint. — Torts. — Contracts. — Negligence.*—A complaint setting out a contract by defendant with plaintiff for the erection of a windmill upon plaintiff's barn, together with a supplemental agreement concerning same, and then, after making many different allegations of negligence, avers that by reason of such acts of negligence, without any fault upon his part, the plaintiff sustained damage, states a cause of action in tort, and not on contract.   p. 503.

17. SAME.—*Complaint.—General Construction.*—Pleadings will be construed so as to give effect, if possible, to all of the material allegations.   p. 504.

18. SAME.—*Complaint.—Construction by Trial Court.—Appeal and Error.*—A complaint whose allegations are such that it is doubtful whether it sounds in tort or in contract and which is tried upon the theory of an *ex delicto* action, will be so construed on appeal.   p. 504.

19. EVIDENCE.—*Injury to Crops in Barn.—Negligence.—Erection of Windmill.—Damages.*—In an action for damages caused by the falling of a windmill negligently erected by defendant upon plaintiff's barn, evidence of the damage caused to plaintiff's crops stored in the barn is admissible.   p. 504.

20. APPEAL AND ERROR. — *Briefs. — References to Transcript.*— Contentions as to the improper rulings of the trial court in admitting evidence may not be considered where the briefs fail to point out the pages and lines of the transcript where the same may be found.   p. 504.

21. EVIDENCE. — *Hypothetical Questions. — Failure to Supply Evidence of Details.—Duty of Adversary.*—Where a party propounds an hypothetical question on his agreement later to supply the evidence of the details thereof, and he fails to supply

same, it is his opponent's duty, in order to present error thereon, to move to strike out the answers thereto, after the close of such party's evidence.  p. 505.

22.  EVIDENCE.—*Receiving Incompetent, to Prove Established Fact.—Appeal and Error.*—The admission of incompetent evidence to prove a well-established fact in a case does not constitute reversible error.  p. 505.

From Hamilton Circuit Court; *Ira W. Christian,* Judge.

Action by Wymond J. Beckett against the Flint & Walling Manufacturing Company.  From a judgment on a verdict for plaintiff for $1,100, defendant appeals.  Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.  *Affirmed.*

*Chambers, Pickens, Moores & Davidson, Shirts & Fertig* and *Allen P. Vestal,* for appellants.

*William S. Christian* and *Wymond J. Beckett, in pro. per.,* for appellee.

GILLETT, J.—Appellee brought this action to recover damages for an injury to his barn and the contents thereof, owing to the fact that appellant constructed a windmill thereon in such an insufficient manner that it fell.  As a number of the questions which this appeal involves depend upon the construction of the complaint, as to whether it is in tort or contract, our first undertaking shall be to state, so far as essential to an understanding of the question of construction, the substance of said complaint.  The following facts are pleaded:  Defendant is, and was on December 12, 1902, a corporation engaged in the manufacture, construction, and erection of windmills.  Plaintiff was on said date the owner of a round barn, 100 feet in diameter and 34 feet high, measured at the eaves, with a conical roof, rising to a height of 70 feet.  There was an air-shaft or duct in the center of said barn, extending from the bottom thereof to, and projecting through, the roof.  The shaft was between four and five feet square, and was constructed of heavy timbers, braced at intervals with boards.  On the

day aforesaid, plaintiff contracted with defendant for the purchase and erection of a sixteen-foot windmill, to be erected on said air-shaft, if found sufficiently strong to support said mill. The contract was in writing, and is set out in the body of the complaint. By the terms of this contract appellant agreed to erect said mill on said barn, furnishing all labor and tools and necessary materials, except timber. The contract contained the following further provisions:

"The above outfit to be erected in a first-class manner, and will run and operate the machinery in an ordinary wind, and grind reasonably fast. All machinery set in proper position and started to work in good order. * * * The Star mill is constructed of good material, in a first-class manner, to withstand any storms that do not damage substantial buildings and other windmills in the vicinity."

At this point we quote certain of the allegations of said complaint: "And plaintiff says that at the time he entered into the agreement and contract for the construction and erection of a windmill upon said barn, the construction of said barn, and the uses for and to which it was applied and used as aforesaid, were made known to the defendant herein; and that at said time the defendant had full knowledge of the construction of said barn, and the purposes for which it was to be used as herein alleged, and also, at the time of entering into said contract and the erection of said windmill upon said air-shaft as aforesaid, said defendant had full knowledge of the material and construction of said air-shaft, as aforesaid, and at the time of entering into said contract defendant agreed to examine said air-shaft and determine for itself its strength and sufficiency to hold said mill, and agreed to make or cause said shaft to be made sufficiently strong to hold said mill. And before defendant placed said windmill and tower upon said air-shaft, defendant examined said air-shaft and added or caused to be added additional braces and stays thereto, and pronounced

said air-shaft sufficiently strong to support said mill and tower, and then placed said mill and tower upon said air-shaft.    *    *    *    And plaintiff says that defendant did erect upon said barn and placed upon said air-shaft said power windmill, consisting of a wheel, tower, shafting, rods, and plates; and that said mill was erected upon said air-shaft, and completed on or about February 13, 1903, and plaintiff paid the agreed and stipulated price therefor." It is alleged that the windmill and the steel tower or frame weighed about 2,000 pounds.   The complaint contains the following specifications of negligence: "And plaintiff says that defendant negligently constructed and erected said windmill upon said air-shaft as a tower or foundation for the same, without making or causing said shaft to be made sufficiently strong to hold the same, and negligently failed to fasten said tower securely to said air-shaft, in this, to wit, that the defendant negligently placed the foundation planks upon which the foot of said tower rested upon cross-beams upon said air-shaft, without nailing, bolting, or in any way fastening said foundation boards to said cross-beams; that defendant negligently failed and neglected to put lag-screws or bolts in the foot or base-plate of said windmill tower, as it was its duty so to do, and negligently failed and neglected to fasten said boards, upon which rested the foot of said tower as aforesaid, to said cross-beams upon which they rested as aforesaid, and negligently failed to nail said boards or bolt said boards together, and negligently failed to put any bolts or lag-screws through the base-plate which constituted the foot of said steel tower, and negligently placed said base-plate on boards that were defective and wind-shaken, but negligently attempted to fasten said steel tower to said air-shaft by means of four rods about three-quarters of an inch in diameter and about four or five feet in length; that the defendant negligently put one end of said bolt through the foot or base-plate of said steel tower, and negligently bent the other end of said

rod so that it passed through the vertical post of said air-shaft at right angles to the same; that defendant negligently fastened said tower upon which said windmill rested by means of said bent rods, and negligently failed to secure and fasten said steel tower by any other means or in any other way, and negligently used rods that were smaller than the hole in said base-plate, thereby allowing said base-plate to move about."

The complaint further alleges "that by reason of defendant's failure properly to fasten said steel tower upon said air-shaft as aforesaid, and without any fault or negligence on the part of this plaintiff, the wind bearing against said wheel of said mill caused said bent rods to straighten out, thereby loosening said tower, so that it worked up and down and from side to side upon the planks or boards upon which it was placed; that said rods, by means of said motion, wore the holes in said boards much larger than the size of said rod, and that, by continual wearing and motion, said tower became loose upon said boards, and said rods became straightened out to such an extent that they permitted the wind to weave said mill and tower about, and permitted said mill and tower to move about and wear said boards and stretch said rods and straighten the same, as aforesaid, and thereby loosened said mill to such an extent that a wind of ordinary velocity, and only sufficient to run said mill and cause the same to work and grind, as it was intended so to do, and not sufficient wind to destroy other substantial buildings in the neighborhood, and not sufficient wind to destroy and blow down other windmills in the same neighborhood, rocked said mill and twisted the same and caused the same to break and twist said air-shaft and fall about sixty feet upon the roof of said barn." It is also alleged that the plaintiff had no notice or knowledge of the faulty, negligent, and unskilful erection of the mill, and that "by reason of the defendant's negligence, carelessness, imprudence, and unskilfulness in erecting, constructing,

and fastening said steel tower to said air-shaft, the plaintiff has suffered, without his fault or negligence, great damages." The complaint then specifies various items of damage, and to these averments is added the following: "Total damage to this plaintiff by reason of defendant's negligence and failure of duty as herein alleged, $2,778.64."

The leading contention of appellant's counsel is that the duty it owed to appellee arose out of contract, and that, as appellant was not engaged in a public employment, its obligation could only be enforced by an action on the contract for a breach thereof. The latter insistence cannot be upheld. It is, of course, true that it is not every breach of contract which can be counted on as a tort, and it may also be granted that if the making of a contract does not bring the parties into such a relation that a common-law obligation exists, no action can be maintained in tort for an omission properly to perform the undertaking. It by no means follows, however, that this common-law obligation may not have its inception in contract. If a defendant may be held liable for the neglect of a duty imposed on him, independently of any contract, by operation of law, *a fortiori* ought he to be liable where he has come under an obligation to use care as the result of an undertaking founded on a consideration.

Where the duty has its roots in contract, the undertaking to observe due care may be implied from the relationship, and should it be the fact that a breach of the agreement also constitutes such a failure to exercise care as amounts to a tort, the plaintiff may elect, as the common-law authorities have it, to sue in case or in assumpsit. It is broadly stated in 1 Comyns' Digest, Action on the Case for Negligence, A 4, p. 418, that "if a man neglect to do that, which he has undertaken to do, an action upon the case lies. * *· * But, if there be not any neglect in the defendant, an action upon the case does not lie against him, though he do not per-

form his undertaking." Professor Pollock says: "One who enters on the doing of anything attended with risk to the persons or property of others is held answerable for the use of a certain measure of caution to guard against that risk. To name one of the commonest applications, 'those who go personally or bring property where they know that they or it may come into collision with the persons or property of others have by law a duty cast upon them to use reasonable care and skill to avoid such collision.' * * * In some cases this ground of liability may coexist with a liability on contract towards the same person, and arising (as regards the breach) out of the same facts. Where a man interferes gratuitously, he is bound to act in a reasonable and prudent manner according to the circumstances and opportunities of the case. And this duty is not affected by the fact, if so it be, that he is acting for reward, in other words, under a contract, and may be liable on the contract. The two duties are distinct, except so far as the same party cannot be compensated twice over for the same facts, once for the breach of contract and again for the wrong. Historically the liability in tort is older; and indeed it was by special development of this view that the action of assumpsit, afterwards the common mode of enforcing simple contracts, was brought into use. 'If a smith prick my horse with a nail, etc., I shall have my action upon the case against him, without any warranty by the smith to do it well. * * * For it is the duty of every artificer to exercise his art rightly and truly as he ought.' " Webb's Pollock, Torts, 533-536. This general thought also finds expression in Mr. Street's valuable work (1 Street, Foundations of Legal Liability, 92). It is there said: "The general doctrine may be laid down thus: In every situation where a man undertakes to act or to pursue a particular course he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of

others may not be injured by any force which he sets in operation or by any agent for which he is responsible. If he fails to exercise the degree of caution which the law requires in a particular situation, he is held liable for any damage that results to another just as if he had bound himself by an obligatory promise to exercise the required degree of care. In this view, statements so frequently seen in negligence cases, to the effect that men are bound to act with due and reasonable care, are really vital and significant expressions. If there had been any remedial necessity for so declaring, it could obviously have been said without violence to the principle that men who undertake to act are subject to a fictitious or implied promise to act with due care." See, also, *Howard* v. *Shepherd* (1850), 9 C. B. (67 Eng. Com. Law) 296, 321; *Coy* v. *Indianapolis Gas Co.* (1897), 146 Ind. 655, 36 L. R. A. 535; *Parrill* v. *Cleveland, etc., R. Co.* (1900), 23 Ind. App. 638; *Rich* v. *New York, etc., R. Co.* (1882), 87 N. Y. 382; *Dean* v. *McLean* (1875), 48 Vt. 412, 21 Am. Rep. 130; *Stock* v. *City of Boston* (1889), 149 Mass. 410, 21 N. E. 871, 14 Am. St. 430; *Bickford* v. *Richards* (1891), 154 Mass. 163, 27 N. E. 1014, 26 Am. St. 224; Addison, Torts (3d ed.), p. 13; 1 Thompson, Negligence (2d ed.), §5; 1 Shearman & Redfield, Negligence (5th ed.), §§9, 22; Saunders, Negligence, 55, 121; 6 Cyc. Law and Proc., 688.

The position in which appellant placed this large and heavy structure, located, as it was, upon the barn, some seventy feet above the earth, was such that it was calculated to do great harm to appellee's property should it fall. We cannot doubt, in view of the terms of the contract, construed in the light of the practical construction which the parties gave to it, to say nothing of the extraneous agreement set forth in the complaint, that it was the duty of appellant to exercise ordinary care to secure the tower in such a manner that this heavy and exposed structure would not, under the action of ordinary

winds, weave around and become detached from the body of the air-shaft. Insecurely fastened, as the complaint shows that this structure was, appellant was bound to apprehend that it might fall, and that, if it did, great injury would thereby be occasioned to appellee. It was also bound to apprehend, from the very care and skill which it impliedly held itself out as exercising (a circumstance calculated to throw appellee off his guard), and from the fact that an examination was difficult, that in all probability the defects would not be observed in time to avoid the injury. Indeed, as laid down in *Mowbray* v. *Merryweather* [1895], 2 Q. B. 640, and *Devlin* v. *Smith* (1882), 89 N. Y. 470, 42 Am. Rep. 311, appellee owed no duty, so far as appellant was concerned, to examine the tower. The contrivance was inherently dangerous, and the circumstances of placing it upon the barn, as shown, made it calculated to eventuate in harm. This being true, and as there was no intervening responsible agency between appellee and the wrong, so that the causal relation remained unbroken, we can perceive no reason for acquitting appellant of responsibility as a tort feasor. See Wharton, Negligence (2d ed.), §438; 1 Beven, Negligence (2d ed.), 62; *Roddy* v. *Missouri Pac. R. Co.* (1891), 104 Mo. 234, 15 S. W. 1112, 12 L. R. A. 746, 24 Am. St. 333. It is not necessary to consider the extent to which contracts may impose obligations to exercise care for the protection of third persons, for here the relation is direct and immediate, but we quote, as showing that there is clearly a liability in tort, in such a case as this, the following general statements in 1 Shearman & Redfield, Negligence (5th ed.), §117, with reference to the liability for selling dangerous goods: "But one who knowingly sells an article intrinsically dangerous to human life or health, such as poison, explosive oils or diseased meat, concealing from the buyer knowledge of that fact, is responsible to any person who, without fault

on the part of himself or any other person, sufficient to break the chain of causation, is injured thereby. And we see no reason why the same rule should not apply to articles known to be dangerous to property."

It is next objected that the complaint is bad because it is not alleged that the supports to the mill were defective.

12. While it might admit of question whether the pleading would be sufficient in this respect were the sole ground of complaint the failure to strengthen the air-shaft, yet it must be remembered that the complaint contains a number of specifications of negligence, and that in connection therewith it is clearly shown that defects did exist, particularly in the manner of fastening the tower to the air-shaft. So far as the objection under consideration is concerned, we may add that upon a critical examination of the complaint it appears that the accident was due, not to the failure to strengthen the air-shaft proper, but to the manner in which it was attempted to secure the tower thereon.

We find ourselves unable to acquiesce in the view that it appears, either from the complaint or the evidence, that appellee was guilty of contributory negligence. Ap-

13. pellant assumed the obligation of properly erecting and securing the mill, and appellee had a right to rely upon the presumed superior knowledge of the agents of appellant that the mill would properly be secured, and, as shown, was not obliged to make search for the existence of original defects. We are therefore of opinion that appellee is not to be regarded as blameworthy because he failed to observe that his property had been endangered by the negligence of appellant.

A number of questions are argued by appellant's counsel which are based upon the contention that the theory of the complaint was that appellant had committed a

14. breach of contract. The latter insistence is based on the fact that the contract is set out in full in the

complaint.   It is often difficult to determine whether, in
the statement of such a cause of action as the one under
consideration, wherein the very breach of the contract also
constitutes negligence, the purpose of the pleader was to
rely upon a breach of contract or to charge negligence in
the violation of the implied duty which was created by the
undertaking of the defendant.   It is true that in an action
on the case for negligence, wherein the declaration or com-
plaint is not based on mere nonfeasance it is not necessary
to plead a consideration, and, therefore, where the action
is based on the manner in which an undertaking was per-
formed, or, in other words, on some misfeasance or mal-
feasance, the allegation of a consideration may be regarded
as one of the markings of an action *ex contractu*.   But we
do not understand that this is a controlling consideration;
on the contrary, it does not appear to admit of question that
if the contract or consideration be set out as a matter of
inducement only, the plaintiff's action may be regarded as
one in case for a violation of the common-law duty which
the circumstances had imposed upon the defendant.    1
Chitty, Pleading, *135; *Dickson* v. *Clifton,* 2 Wils. 319;
Watson, Damages for Per. Inj., §570; 21 Ency. Pl. and
Pr., 913.   We are especially impressed with the
view that in code pleading, which was designed pre-
eminently to be a system of fact pleading, a plain-
tiff, in suing in tort, may properly set out his contract, as
constituting the underlying fact, instead of charging the
defendant's undertaking in general terms, and that the
plaintiff does not thereby necessarily commit himself to
the theory that his action is for breach of contract.   *Leeds*
v. *City of Richmond* (1885), 102 Ind. 372; *Parrill* v.
*Cleveland, etc., R. Co., supra; McMurtry* v. *Kentucky
Cent. R. Co.* (1886), 84 Ky. 462, 1 S. W. 815; Watson,
Damages for Per. Inj., §570.   In the complaint before us
appellee not only sets out the written contract, but
he pleads a supplemental or subsidiary agreement
as well, so that it can hardly be said that he relied

on the written contract as the foundation of the action. He charges no breach of the contract except as it can be implied from the allegations of negligence; he alleges damages "by reason of the defendant's negligence, carelessness, imprudence, and unskilfulness in erecting, constructing, and fastening said steel tower to said air-shaft as aforesaid;" he charges, in setting forth the total amount of his damages, that they were occasioned "by reason of the defendant's negligence and failure of duty as herein alleged," and he avers that he "had no notice or knowledge of the faulty, negligent, and unskilful erection of said mill," and that he himself was without fault or negligence in the premises. In view of the general structure of the complaint, and applying to it the rule that a construction of a pleading which will give effect to all of its material allegations is to be preferred, where reasonably possible (*Monnett* v. *Turpie* [1892], 133 Ind. 424), it appears to us that it must be held that the action was for the tort. But, admitting that there is room for doubt on this subject, the fact that the court below, as the record plainly shows, tried the cause on the theory that it was an action *ex delicto,* must settle the question against the contention of appellant. . *Lake Erie, etc., R. Co.* v. *Acres* (1886), 108 Ind. 548; *Diggs* v. *Way* (1899), 22 Ind. App. 617.

There was no error in permitting appellee to prove the extent of the injury to his crops and agricultural implements, which were stored in the barn. Such damages were the natural and proximate result of the falling of the roof, and there can be no ground of objection to a recovery therefor. 1 Joyce, Damages, §90; 13 Cyc. Law and Proc., 28.

Several minor questions are presented concerning the court's rulings on the evidence. Of these we dispose thus: Counsel have not referred us to the page and line of the answer of the witness Woods, and we have been unable to find it; the question addressed to

the witness Beals was proper cross-examination, and, there having been an undertaking subsequently to supply missing elements in an hypothetical question addressed to certain of appellee's witnesses, there should have been a motion made after the close of appellee's evidence to strike out the answers. Indeed, we may say that the character of the evidence in this case is such that we would not be authorized to reverse for any possible error in the reception of evidence relative to the fastening of the steel tower. Appellant's negligence in that particular stands out as a conspicuous fact in the case.

Judgment affirmed.