Anthony B. LEWIS, Plaintiff,

v.

The METHODIST HOSPITAL,
INC., Defendant.

No. 2:01–CV–175JM.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 7, 2002.

Darnail Lyles, Gary, IN, for plaintiff.

David H Kreider, R. Lawrence Steele, Hodges and Davis, PC, Merrillville, IN, for defendant.

### ORDER

MOODY, District Judge.

The plaintiff in this case, Anthony B. Lewis, M.D. ("Lewis")[1], contracted with defendant, The Methodist Hospital, Inc. ("Methodist"), for Methodist to provide certain administrative services to Lewis including billing. The parties agree that their contractual relationship ended December 31, 1996. On March 19, 2001, Lewis initiated this action by filing a two-count complaint. Count I, designated "Breach of Contract," alleges that Methodist breached the contract through errors made in the billing and collection of Lewis's patient accounts. Count II, designated "Tortious Interference with Prospective Advantage in Business," alleges that Methodist breached the implied covenant of good faith and fair dealing by steering patients to other physicians.

Methodist has moved for summary judgment pursuant to RULE 56 of the FEDERAL RULES OF CIVIL PROCEDURE.[2] RULE 56 directs this court to enter the summary judgment Methodist requests if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). There are no facts in dispute in this case, and Indiana views determinations regarding the appropriate statute of limitations as "peculiarly suitable" for summary disposition. *A.M. v. Roman Catholic Church,* 669 N.E.2d 1034, 1037 (Ind.Ct.App.1996).

Methodist argues that no matter what legal theory Lewis attempts to plead, Indiana follows a rule that the "nature or substance" of the action, as determined from the harm alleged, dictates which statute of limitations applies. *Whitehouse v. Quinn,* 477 N.E.2d 270 (Ind.1985). Because Lewis is complaining of an injury to his personal property—a monetary loss in the collection of his patient accounts and other harm to his business—Methodist asserts that the nature or substance of his claim is tortious and the two-year statute of limitations for actions alleging damage to personal property applies. Ind.Code § 34–11–2–4(2); *Schuman v. Kobets,* 716 N.E.2d 355, 356 (Ind.1999); *Whitehouse,* 477 N.E.2d at 273–74.[3]

In response, Lewis argues that Count I of his complaint contains no allegations of negligence, but instead claims breach of a written contract, subject to the ten-year statute of limitations found in Ind.Code § 34–11–2–11. Despite its "tortious interference" caption, Lewis argues that Count II of the complaint pleads that Methodist acted fraudulently, and so a six-year statute of limitations applies. Ind.Code § 34–11–2–7(4).

The contract between Lewis and Methodist contains only one provision relevant to the present dispute.[4] Paragraph 1(B) of the contract provides as follows:

1. The court notes that Lewis was ordered to file supplemental materials establishing his state of citizenship, and did so. The court is satisfied that this case falls within its diversity jurisdiction.

2. Methodist also moved to strike several exhibits submitted by Lewis in opposition to summary judgment. Because those exhibits are not relevant to this court's decision, and have not been considered, Methodist's motion to strike is DENIED.

3. The statute discussed in *Whitehouse* was Ind.Code § 34–1–2–2(1), which subsequently was recodified as § 34–11–2–4(2).

4. Lewis also argues that paragraph 11(G) of the contract is relevant because in it Methodist warranted that its representatives were

*Billing and Collection of Accounts:* Hospital [Methodist] shall implement and carry out billing and collection procedures for medical services using the Practice's [Lewis's] provider numbers. All decisions to institute litigation in relation to the collection of delinquent patient accounts shall be made jointly by Practice and Hospital.

In Count I of his complaint, Lewis alleges that Methodist "breached its contractual duties to provide services to manage [his] practice" causing him damages including uncollected and unbilled patient accounts, incomplete and untimely collection of patient accounts, and expenses incurred to investigate and audit Methodist's billing practices.

█ Indiana has recognized for many years that when a person contracts to perform services and fails to perform those services in a workmanlike manner, that misfeasance can constitute both a breach of contract and the tort of negligence. *Greg Allen Construction Co., Inc. v. Estelle,* 762 N.E.2d 760, 776 (Ind.App.2002); *Georgie Boy Mfg., Inc. v. Pariso,* 550 N.E.2d 111, 112 (Ind.Ct.App.1990); *Wilson v. Palmer,* 452 N.E.2d 426, 429 (Ind.App. 1983); *Flint & Walling Mfg. Co. v. Beckett,* 167 Ind. 491, 79 N.E. 503 (1906). The apparent availability of two legal theories, however, is restricted by the doctrine Methodist raises in its summary judgment motion, that "the nature or substance of the cause of action," rather than the form of the pleadings, dictates what statute of limitations applies.[5] *Schuman,* 716 N.E.2d at 356 (quoting *Whitehouse,* 477 N.E.2d at 274); *Butler v. Williams,* 527 N.E.2d 231, 233 (Ind.Ct.App.1988); *Shideler v. Dwyer,* 275 Ind. 270, 417 N.E.2d 281, 285 (1981).

Explaining the rationale for what this court will simply call the *Whitehouse* rule, the Indiana Supreme Court stated that if the rule were otherwise:

[A]ll actions for injury to personal property or for personal injuries would be governed by the longer statute of limitations merely by reason of the fact that some contractual relationship could be alleged. Litigants, therefore, claiming injuries to person or property which arose from any relationship where the parties had contracted, expressly or impliedly, would be given a greatly extended period to bring their action. This would create an artificial distinction between actions for personal injury or personal property damage by non-contracting parties and those where some contractual relationship could be alleged.

*Whitehouse,* 477 N.E.2d at 274.

In *Whitehouse,* plaintiff Whitehouse had entered into a written fee agreement with his lawyer, Quinn, for Quinn to pursue a personal injury claim against several defendants. Quinn had Whitehouse sign a

---

"competent to perform the services" required in the contract. The entirety of paragraph 11(G), the final one in the contract, provides:
The parties agree and warrant that their respective representatives are competent and authorized to act on behalf of each party and once executed, this Agreement shall be binding upon both parties.
Clearly, paragraph 11(G) does nothing more than warrant that the contract signatories are authorized to bind the contracting parties.

5. This appears to be at odds with federal interpretation of modern pleading rules, which recognizes that the concept of a "cause of action" has been replaced by a "claim for relief," that is, a set of facts entitling the pleader to relief under one or more legal theories. *Bartholet v. Reishauer, A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992); *but cf. Davis v. Geo. S. Olive & Co.,* 731 F.Supp. 1380, 1382 (S.D.Ind.1990) (agreeing with *Shideler v. Dwyer,* 275 Ind. 270, 417 N.E.2d 281, 286 (1981), that dominant trend under modern pleading rules is to recognize substance over form of pleadings.)

general release even though Quinn had failed to pursue two of the potential tort-feasors. More than two years later, Whitehouse sued Quinn, alleging this failure breached the fee contract between them and so was governed by the statute of limitations applicable to written contracts. The Indiana Supreme Court disagreed:

> Whitehouse possessed a personal property interest in the form of a tort lawsuit against the State of Indiana.... The substance of Whitehouse's claim is damage to a personal property interest in the form of a tort law suit.... Quinn's conduct in permitting Whitehouse to sign the release, whether a breach of common law duty or a breach of contractual duty, resulted in injury to Whitehouse's personal property interest and in his action to recover damages for this injury. The existence of a written fee contract does not change the fact that Whitehouse's claim is for damage to a personal property interest. Therefore, it comes within the province of Ind.Code § 34–1–2–2(1), the statute section governing injuries to personal property.

*Whitehouse*, 477 N.E.2d at 274.

Thus, *Whitehouse* requires courts to "identify the substance of the cause of action by inquiring into the nature of the alleged harm." *Id.* If the claim is one for "damage to a personal property interest," the two-year limitations period applies. *Id.* Were it only this simple, there could be little argument with Methodist's contention that because Lewis is complaining about damage to personal property—financial and other business interests—the two-year limitations period applies.

The problem that arises is every breach of contract, if it causes harm at all, can only cause harm to either property or person, corrupting the rationale for the *Whitehouse* rule. Instead of preserving a distinction, for the purposes of the limita-

tions period, between contract actions and tort actions "wrapped ... in contract language," *Schuman*, 716 N.E.2d at 355, the logical consequence of the *Whitehouse* rule is that every contract breach should be governed by the two-year limitations period found in Ind.Code § 34–11–2–4.

The Indiana Supreme Court confronted the dilemma created by this unintended consequence of the *Whitehouse* rule in *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244 (Ind.1992). In *Pokraka* the plaintiffs, Joseph and Joan Pokraka, sold a two-flat apartment and took a mortgage from the buyer. The defendant, Lawyers Title, handled the closing but failed to record the mortgage for more than ninety days. During the delay the buyer gave another mortgage on the property to a commercial lender, resulting in that lender's mortgage being superior to the Pokrakas'. The Pokrakas were unaware of this until several years later when the lender threatened foreclosure. The Pokrakas were then forced to pay off the lender's first mortgage to protect their own interest, and sued Lawyers Title.

Relying on *Whitehouse*, Lawyers Title asserted that the suit was governed by the two-year limitations period and untimely. Because a mortgage is a security interest, and security interests are personal property, Lawyers Title argued that the Pokrakas were complaining about an injury to personal property and *Whitehouse* required that the two-year statute of limitations apply. The Indiana Supreme Court made short work of this argument:

> We do not read *Whitehouse* as compelling agreement with the position of Lawyers Title. Unlike actions for attorney malpractice with which we dealt in *Whitehouse*, a specific limitation period of six years for fraud and for breach of an oral contract is provided by statute. Ind.Code § 34–1–2–1. Were we to ac-

cept the reasoning of Lawyers Title here, the portions of Ind.Code § 34–1–2–1 relating to fraud and oral contracts would be unnecessary. Such an application would be tantamount to judicially repealing these six-year statutes of limitations because a recovery on theories of fraud or breach of an oral contract would always involve either personal injury or damage to property. We hold that actions for fraud and for breach of an oral contract are governed by Ind. Code § 34–1–2–1 which provides for a six-year statute of limitations. Therefore, the claim was not barred by the statute of limitations.

595 N.E.2d at 247. Lewis argues that *Pokraka* dictates that this court cannot apply *Whitehouse* to the present case, since to do so would in effect be a judicial repeal of the statute of limitations for fraud and for actions on a written contract.

The impact of *Pokraka* on *Whitehouse* is not entirely clear. Seven years after *Pokraka,* the Indiana Supreme Court addressed the contract/tort statute of limitations issue again when it decided *Schuman.* Plaintiff Linda Schuman rented an apartment from Ernest and Susan Kobets under an oral month-to-month lease. *Schuman,* 716 N.E.2d at 355. In 1990 she became ill and was diagnosed with histoplasmosis, most likely caught from spores in the excrement of pigeons which had been roosting inside the wall of her apartment. *Id.* at 356. After a doctor advised that the illness would pass on its own, Schuman failed to pursue a demand she had made of the Kobetses to pay her medical bills. *Id.*

In 1995 the illness recurred and Schuman nearly died. *Id.* She brought suit against the Kobetses, alleging negligence, breach of implied warranty of habitability and nuisance. *Id.* The trial court dismissed her complaint and the court of appeals affirmed, observing that no matter whether her action was characterized as arising from breach of her oral lease, or breach of the implied warranty of habitability in that lease, the nature of Schuman's harm was injury to her person, and so the *Whitehouse* rule dictated that the two-year statute of limitations be applied. *Schuman v. Kobets,* 698 N.E.2d 375, 378 (Ind.Ct.App.1998). The court of appeals dealt with the apparent anomaly created by *Pokraka* only by noting that the case "should be limited to its facts." *Id.* at 378 n. 2

The Indiana Supreme Court affirmed in part and reversed in part. The Court found that the claim based on breach of the implied warranty of habitability was a contract claim governed by a six-year statute of limitations (for actions on oral contracts) and so had been wrongly dismissed. *Schuman,* 716 N.E.2d at 356. The court noted that the damages recoverable on that claim would be contractual in nature, for example, the difference between the contract price for the apartment and its market value as delivered. *Id.* at 357. As to the remainder of her complaint, the "Court of Appeals was correct to affirm dismissal of the tort claims," *id.* at 356, because "[t]he thrust of Schuman's claim is in tort. She seeks recovery for a personal injury sustained as a result of the roosting pigeons." *Id.* at 357.[6]

---

**6.** It would seem likely Schuman sought personal injury damages for breach of the implied warranty of habitability, and not the lost market value of her apartment, making the "thrust" of both claims the same. Thus, the *Whitehouse* rule would seem to apply, barring her claim no matter which legal theory she used. The Court's decision that Schuman could pursue contractual damages in the manner proposed may have been a judicial creation so that Schuman was not left without any remedy.

It is difficult to ascertain the principle animating these decisions, that is, to explain what differentiates the warranty-of-habitability claim in *Schuman* and the "failure-to-record-mortgage" claim in *Pokraka* as contract claims, while the remaining claims in *Schuman* and the claim in *Whitehouse* were tort claims. A cynic might say that the principle is that the Indiana Supreme Court "knows a tort claim when it sees one," but cynicism provides little in the way of guidance for future litigants.

The distinction that can be made among the claims at issue in *Schuman, Pokraka,* and *Whitehouse* is probably best explained by the discussion in *Insul–Mark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 557 (Ind.1993). In that case the plaintiff, a manufacturer of roofing fasteners, contracted with defendant to treat the fasteners to inhibit rust. The defendant had given written assurances that its process would result in "less than 10% red rust" after 30 "Kesternich Cycles," a process designed to simulate prolonged environmental exposure. *Insul–Mark Midwest, Inc. v. Modern Materials, Inc.*, 594 N.E.2d 459, 461 (Ind.Ct.App.1992). When the fasteners rusted immediately in actual use, plaintiff brought suit alleging breach of express and implied warranties. The defendant argued that the substance of the action was for injury to property, either the fasteners themselves, or the plaintiff's business good will and reputation, and the trial court applied the two-year statute of limitations for injury to property and dismissed.

The court of appeals, in a portion of the opinion adopted by the Indiana Supreme Court, reversed. The court noted that the complaint alleged that the parties had contracted for the defendant to "coat large quantities screws ... so as to exceed the proposed corrosion standard 4470 ... which required resistance to 15 cycles of exposure in the Kesternich Cabinet with less than 15% of the surface area rusted," and that the defendant had breached the contract because the screws coated "failed to comply with the expressed and implied warranties...." *Insul–Mark Midwest,* 594 N.E.2d at 464. The court then aptly summarized why the contract, not tort, statute of limitations applied:

> It is clear from the language of the complaint that Distributors seek to recover from damages sustained as a result of Modern's alleged failure to comply with the terms of the service contract. Stated otherwise, it is Modern's failure to conform the product to its written and oral assurances, rather than Modern's noncompliance with a standard of care imposed by law, which is the gravamen of Distributors' complaint. We therefore hold that the six-year statute of limitations for oral contracts, and not the two-year statute, applies to this action.

*Id.* at 465.

■ This passage is the key to making the consistent sense of *Schuman, Pokraka* and *Whitehouse:* when a plaintiff seeks damages resulting from breach of an express or implied *term* of a contract, the action sounds in contract and a contractual statute of limitations applies. When the plaintiff seeks damages resulting from the breach of a *duty* implied by law, i.e., the defendant did not meet the standard of care required by law in performing the contract, the action sounds in tort and the two-year statute of limitations applies.

■ *Pokraka* can be easily explained using this rationale. The court noted that the plaintiff's pre-trial contentions specifically claimed that an oral contract between the parties "obligated [the defendant] to follow the customs of title companies in northwest Indiana ... and that it failed to do so." *Pokraka,* 595 N.E.2d at 248.

"Expert testimony at trial established that it is the policy of all title companies in northwest Indiana, to record, as soon as possible after closing, legal documents requiring recordation." *Id.* Thus, the decision in *Pokraka* results from the fact that the plaintiff pleaded, and proved, that the defendant breached a contractual term requiring the defendant to follow northwest Indiana title companies' policies.

*Schuman* is similar. The Indiana Supreme Court affirmed judgment on the pleadings for defendant on plaintiff's non-specific, negligent breach of contract allegations, reasoning that those allegations were based on tort theory and governed by a two-year statute of limitations. Judgment for defendant on the implied warranty of habitability claim was reversed, however, because the warranty of habitability is an implied contractual *term*,[7] so the longer statute of limitations for contract actions applied.

The same rationale can be used to explain *Whitehouse*, despite the focus in that case on the nature of the harm pleaded. The plaintiff in *Whitehouse* relied solely on the existence of a contingent fee contract, which he did not even attach to his complaint, making it impossible to say that the action was based on a contractual term. Instead, the plaintiff was simply alleging that the defendant attorney had not performed the contract in a manner consistent with the standards imposed by law on his profession. Thus, just as the Indiana Supreme Court described it in *Pokraka*, *Whitehouse* was nothing more than an action for "attorney malpractice." *Pokraka*, 595 N.E.2d at 247.

The court therefore examines Lewis's complaint in this light. If Lewis is claiming that Methodist breached express or implied terms of the contract, then the ten-year statute of limitations for written contracts applies. If, on the other hand, Lewis is claiming that Methodist did not perform the contract so as to meet the standard of care required by law, then the two-year statute of limitations for injury to property applies.

As to Count I of Lewis's complaint, Methodist argues that the latter is the case, because the contract required only that Methodist "implement and carry out billing and collection procedures," and Methodist unquestionably did so. The gravamen of Lewis's claim, as Methodist sees it, is that Methodist "did not exercise ordinary care—that it was negligent—in billing." Defendant's Brief in Support of Motion for Summary Judgment at 6. This would make Lewis's claim essentially the same as the attorney malpractice claim in *Whitehouse*, subject to a two-year statute of limitations. Ind.Code § 34–11–2–4(2).

Lewis's argument in response is that Count I alleges that Methodist "improperly handled its duties under the contract" and so pleads a breach of contract claim. Examining the allegations of Lewis's complaint, Lewis alleges that Methodist breached its "contractual duties" to provide billing and collection services by: 1) "improper hiring, direction, supervision and retention" of the staff performing the services; 2) "improper or untimely training, or failure to train," the staff performing the services, and; 3) "improper or untimely performance of or failure to perform" the billing and collection services. None of those allegations go to terms specified or implied in the contract. Instead, the court agrees with Methodist that Lewis is claiming that Methodist breached a duty implied by law, that is, Methodist failed to perform its contractual obli-

---

7. *Johnson v. Scandia Assoc., Inc.,* 717 N.E.2d 24, 28, 30–31 (Ind.1999) (warranty of habitability is not imposed by law, but is term of contract implied in fact from parties' course of dealing.)

gations in a professional or workmanlike manner. Thus, a two year statute of limitations applies to Count I, and Methodist is entitled to summary judgment.

■ Methodist argues that Count II, which is captioned "tortious interference" with business, is peppered with allegations that Methodist acted "falsely," "fraudulently," "wilfully" and "wantonly," clearly indicating that Lewis is pleading a tort claim. Lewis's response is that, differentiating it from Count I, "Count II alleges that the Defendant engaged in other activities which also constitute a breach of the Agreement. Count II alleges that the Defendant acted fraudulently...." Plaintiff's Response to Motion for Summary Judgment at 3. A few paragraphs later, Lewis states that the applicable statute of limitations for fraud is six years. Ind.Code § 34–11–2–7(4)...

The court cannot accept Lewis's contention that Count II of his complaint pleads a fraud claim. Not only does Count II fail to plead fraud with the specificity required by RULE 9(b) of the FEDERAL RULES OF CIVIL PROCEDURE, the word "fraud" appears only one time, in Lewis's allegation that Methodist "acted in bad faith, illegally, wilfully, wantonly and fraudulently, by intentionally misrepresenting Dr. Lewis' unavailability to patients...." Complaint ¶ 24. It is obvious that this allegation is included only to make punitive damages available. Indiana does not allow punitive damages for breach of contract unless there is clear and convincing evidence of

an independent tort. *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 981 (Ind.1993).

The crux of Lewis's claim in Count II is that Methodist "systematically and intentionally diverted patients seeking Dr. Lewis' medical services and consultation to other physicians" in breach of "the implied covenant of good faith and fair dealing." Complaint ¶¶ 17, 22. Because neither party recognizes this as the claim's substance, their memoranda for and against summary judgment fail to discuss whether Indiana views the implied covenant of good faith and fair dealing as a term of the contract, to which the contractual statute of limitations applies, or a duty implied by law imposing a standard of performance, subject to the two-year tort statute of limitations. In the jurisdictions that have considered the issue there is no unanimity of opinion.[8] Nevertheless, because the court believes that Indiana law provides an unequivocal answer, the issue may be decided without further briefing.

■ Unlike many, if not most, other states, Indiana does not impute into every contract a duty of good faith and fair dealing. *First Fed'l Savings Bank of Indiana v. Key Markets, Inc.*, 559 N.E.2d 600, 604–05 (Ind.1990); *Pardieck v. Pardieck*, 676 N.E.2d 359, 364 (Ind.Ct.App. 1997); *Ford Motor Credit Co. v. Garner*, 688 F.Supp. 435, 442–43 (N.D.Ind.1988). Such a duty arises in limited circumstances only, such as when a fiduciary relationship

8.  *See, e.g., West Haven v. Commercial Union Ins. Co.*, 894 F.2d 540, 546 (2d Cir.1990) (breach of the implied covenant of good faith and fair dealing is governed by the three year statute of limitations for torts); *Kent v. AVCO Corp.*, 849 F.Supp. 833, 835 (D.Conn.1994) (same); *Krondes v. Norwalk Savings Society*, 53 Conn.App. 102, 113 n. 9, 728 A.2d 1103 (1999) (noting that trial court applied contractual statute of limitations); *Greenwoods Scholarship Foundation, Inc. v. Northwest*

*Community Bank*, 1999 WL 417939 at * 4 n. 5 (Conn.Super.1999) ("breach of the implied covenant of good faith and fair dealing is in essence a contract claim, and hence the six-year statute applies"); *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1144 n. 4, 271 Cal.Rptr. 246, 249 n. 4 (1990) (claim for breach of the covenant of good faith and fair dealing subject to contract statute of limitations "insofar as it rests on the implied contractual promise").

exists. *First Fed'l Savings Bank of Indiana*, 559 N.E.2d at 604–05; *Ford Motor Credit Co.*, 688 F.Supp. at 442–43.

■ Fiduciary duties are implied in an agency relationship. *O.K. Sand & Gravel, Inc. v. Martin Marietta Corp.*, 786 F.Supp. 1442, 1448 (S.D.Ind.1992). Although the contract between Lewis and Methodist specifically disclaimed the creation of an agency relationship, for the purposes of determining the present motion the court assumes there is at least a question of fact as to whether the contract made Methodist Lewis's agent, and so owed him fiduciary duties. *See Union Miniere, S.A. v. Parday Corp.*, 521 N.E.2d 700, 703 (Ind.Ct. App.1988).

That assumption does not save the day for Lewis, however. Applying the *Whitehouse* rule, this means that a claim that an implied covenant of good faith and fair dealing has been breached is really a claim of breach of fiduciary duty. *O.K. Sand & Gravel*, 786 F.Supp. at 1449. Claims for "breach of contract in the fiduciary setting" are subject to Indiana's two-year statute of limitations for damage to personal property. *Id.* As a result, Methodist is also entitled to a summary judgment on Count II of Lewis's complaint because it is barred by the statute of limitations.

For the foregoing reasons, the court GRANTS defendant Methodist's motion for summary judgment. The clerk shall enter a final judgment in favor of defendant Methodist, declaring that plaintiff Lewis shall take nothing by way of his complaint.

SO ORDERED.