In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1555

ANTHONY B. LEWIS,

*Plaintiff-Appellant,*

*v.*

METHODIST HOSPITAL, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:01 CV 175JM—**James T. Moody**, *Judge.*

ARGUED SEPTEMBER 26, 2002 —DECIDED APRIL 7, 2003

Before COFFEY, ROVNER, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Anthony Lewis is a physician specializing in cardiology. This case concerns a contract between Lewis and Methodist Hospital in which Methodist agreed to provide billing services for Lewis's cardiology practice. Disputes arose over Methodist's handling of its responsibilities under the contract, which in the end caused the parties to end their relationship. Invoking the diversity jurisdiction of the federal courts, Lewis (acting in his individual capacity) then sued Methodist for breach of contract and tortious interference with prospective advantage in business. The district court

granted Methodist's motion for summary judgment, on the ground that Lewis was really asserting tort claims, and any tort claim was barred by Indiana's two-year statute of limitations.

Lewis appeals the district court's characterization of his claim as solely a matter of tort law. In his view, Methodist failed to perform its obligations under the contract. This breach in turn gives rise to a claim for breach of contract that is subject to Indiana's more generous ten-year statute of limitations for written contract actions. Although we appreciate the district court's careful effort to ascertain the governing Indiana rule on this point, we nevertheless have come to the conclusion that Lewis's complaint in part stated a claim for breach of contract. Accordingly, we reverse and remand for further proceedings on that part of the case. (In so doing, we express no opinion on the question whether Lewis as an individual is entitled to sue to enforce rights that may belong only to his professional corporation, as this was not discussed in any way by the district court or the parties.)

# I

The actual parties to the agreement in question were Lewis's professional corporation, Anthony B. Lewis, M.D., P.C. (of which he was the sole shareholder) and Methodist Hospital. On January 1, 1994, they entered into a Management Services Agreement (the Agreement) in which the Hospital agreed to manage Lewis's cardiology practice for a one-year term. The Agreement specified that Methodist would provide "staff services, administrative services, management support services, billing services, and purchasing services" to Lewis's practice. The provision in the Agreement titled Billing and Collection of Accounts stated in part, "Hospital shall implement and carry out billing and collection procedures for medical services using the Practice's provider numbers." The Hospital committed

itself to hiring and supervising employees as needed to carry out its duties under the Agreement. The Hospital received 40% of the net receipts of Lewis's practice as payment for its services. The parties twice renewed their Agreement before allowing it to end on December 31, 1996. After several unsuccessful attempts to have the Hospital address his concerns about billing and fee collection, Lewis, in his individual capacity, filed this lawsuit in federal court on March 19, 2001.

At the heart of Lewis's complaint is his allegation that Methodist Hospital failed adequately to bill and collect fees from his patients and their insurers for cardiology services that he provided. In the breach of contract count he alleged that the Hospital breached its duties under the Agreement by improperly hiring and supervising staff or contractors who performed coding, billing and collection work for the practice. Lewis seeks $15,515,806.00 as damages and losses for unbilled and improperly billed services as well as uncollected charges.

Lewis's complaint also included a second count for tortious interference with prospective advantage in business. This too was dismissed on summary judgment. Lewis does not contest that ruling, conceding that his claim was barred by Indiana's two-year statute of limitations for torts. Therefore, the only issue presented in this appeal is whether the Indiana courts would characterize Lewis's claim relating to the Hospital's unsatisfactory performance of its duties under the contract as a tort claim. We review the district court's grant of summary judgment *de novo*. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999).

## II

In a line of cases that stretches back at least to the late 1800s, the Supreme Court of Indiana has wrestled with

the dilemma posed by claims that arise under a botched services contract. See, *e.g.*, *Foulks v. Falls*, 91 Ind. 315 (1883); *Boor v. Lowery*, 3 N.E. 151 (Ind. 1885); *Flint & Walling Mfg. Co. v. Beckett*, 79 N.E. 503 (Ind. 1906). The problem, as the court has candidly acknowledged, is that such claims frequently reflect both tort and contract concerns. *Flint & Walling Mfg. Co.*, 79 N.E. at 505; see also *INS Investigation Bureau, Inc. v. Lee*, 784 N.E.2d 566, 576 (Ind. Ct. App. 2003) ("[I]n a contract for work, there is an implied duty to do the work skillfully, carefully, and in a workmanlike manner. Negligent failure to do so is a tort, as well as a breach of contract."). Where the characterization of the claim matters for purposes of deciding which statute of limitations should be applied, the Supreme Court of Indiana consistently stresses that "the applicable statute of limitations should be ascertained by reference to the nature of the harm alleged rather than by reference to theories of recovery." *Whitehouse v. Quinn*, 477 N.E.2d 270, 273 (Ind. 1985) (citing *Boor v. Lowrey*, 3 N.E. 151 (Ind. 1885)). This provides us with a starting point here, but (as the Indiana cases richly illustrate) it can be a difficult principle to apply in practice.

Our task is to predict how the Supreme Court of Indiana would characterize Lewis's claim that Methodist Hospital failed to provide proper billing and fee collection services for his cardiology practice. See *Commonwealth Ins. Co. v. Stone Container Corp.*, No. 02-2061, 2003 WL 1400794 at *2 (7th Cir. Mar. 19, 2003); *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 416-17 (7th Cir. 1997) (citing *Todd v. Societe Bic, S.A.*, 9 F.3d 1216, 1221 (7th Cir. 1993) (*en banc*) (plurality opinion)). If, as the district court held, Lewis's first count in the complaint is properly characterized as a tort, then it is barred by the two-year statute of limitations for injury to personal property found in Ind. Code § 34-11-2-4. On the other hand, if Lewis's claim against the Hospital is, as Lewis

argues, for breach of contract, then it is governed by the ten-year statute of limitations found in Ind. Code § 34-11-2-11, and Lewis's March 19, 2001, filing was timely.

The district court, in attempting to make sense of the Indiana authority on this issue, held that the absence of a specific term for compliance in the Agreement that Lewis and Methodist executed necessarily meant that Lewis's claim arose solely in tort and had no cognizable contract dimension. The court relied on an earlier decision of this court, *Rexnord Corp. v. DeWolff Boberg & Assocs., Inc.*, 286 F.3d 1001 (7th Cir. 2001), as well as one decision of the Indiana appeals court, *Insul-Mark Midwest, Inc. v. Modern Materials*, 594 N.E.2d 459 (Ind. Ct. App. 1992). *Rexnord* and *Insul-Mark* hold that when parties to a contract choose to specify in their agreement the terms and standards by which compliance may be measured, it is those terms or standards, as opposed to a general standard of care imposed by tort law, that apply. *Rexnord*, 286 F.3d at 1005; *Insul-Mark*, 594 N.E.2d at 465. This rule allows parties to contract around the level of care that would otherwise govern their conduct. It makes good sense as a matter of policy, both because it is consistent with the general rule that parties may bargain for a higher standard of care than the general tort law requires, and because it respects the correlative rule recognized by Indiana courts (and courts in other states as well) that where a contract contains a limiting or qualifying provision, that provision may not be avoided by casting a suit for breach of the contract as a tort. See, *e.g.*, *Orkin Exterminating Co. v. Walters*, 466 N.E.2d 55, 58 (Ind. Ct. App. 1984) ("Bringing a suit in tort does not allow Walters to avoid the limitation of liability clause in the contract."); *Travelers Cas. & Sur. Co. v. Elkins Constructors, Inc.*, No. IP97-1807-C-T/G, 2000 WL 724006, *11 (S.D. Ind. May 18, 2000) (summarizing Indiana cases); see also *Better Food Mkts. v. American Dist. Tel. Co.*, 253 P.2d 10, 15-16 (Cal. 1953).

What *Rexnord*, *Insul-Mark*, and these other cases do not address, however, is the converse proposition: where a contract does *not* specify the terms or standards by which compliance is measured, any performance related problems may be resolved *only* by resorting to tort law. The district court read these cases as creating that rule of law, and it is with this portion of its decision that we respectfully disagree.

In fact, fairly read, the core of Lewis's action against Methodist Hospital states a claim for breach of contract. Two principles that can be distilled from the controlling precedents of the Supreme Court of Indiana lead us to this conclusion. First, as we have already mentioned, that court has held that poorly performed duties assumed under a services contract generally give rise to an action in either contract or tort. *Flint & Walling Mfg., Co.*, 79 N.E. at 505. Second, and more importantly, in considering how to classify a claim for statute-of-limitations purposes, the Supreme Court of Indiana has warned that Indiana courts (and thus federal courts sitting in diversity that are applying Indiana law) must not collapse all breach of contract claims into tort claims. Doing so would impermissibly effect a judicial repeal of the separate statutes of limitations that the Indiana legislature has enacted for breach of contract and oral contract claims. *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 247 (Ind. 1992). See also *Schuman v. Kobets*, 716 N.E.2d 355 (Ind. 1999).

Two earlier Supreme Court of Indiana cases that address a related question—how to deal with attorney malpractice claims—offer helpful guidance as well. The cases of *Shideler v. Dwyer*, 417 N.E.2d 231 (Ind. 1981), and *Whitehouse v. Quinn*, 477 N.E.2d 270 (Ind. 1985), provide a useful contrast to Lewis's case. *Shideler* and *Whitehouse* rest implicitly on the proposition that where one party to a contract owes a fiduciary duty to the other party, a

breach of that duty necessarily gives rise to an action in tort because it is impossible to contract around fiduciary obligations. Later, in *Lawyers Title*, the Supreme Court of Indiana made the point more explicitly, when it explained that "[u]nlike actions for attorney malpractice, with which we dealt in *Whitehouse*, a specific limitation period of six years for fraud and for breach of an oral contract is provided by statute." 595 N.E.2d at 247. See also *O.K. Sand & Gravel, Inc. v. Martin Marietta Corp.*, 819 F. Supp. 771, 781 (S.D. Ind. 1992) ("The substance and nature of the injuries claimed in parts of Counts I, II and IV concern breaches of specific contract terms and failed expectations. Those alleged harms are separate from the harms alleged to have resulted from the breach of a fiduciary duty."). Because no fiduciary relationship existed between Methodist Hospital and Dr. Lewis, the concern about preventing parties from contracting around those special duties does not exist in our case.

The more recent decisions of the Supreme Court of Indiana, are more directly on point. In *Schuman v. Kobets*, the Indiana Supreme Court reversed an appeals court decision that characterized all of Linda Schuman's claims against her former landlords as tort claims. 716 N.E.2d at 356-57. Schuman was diagnosed with histoplasmosis, an illness that she likely contracted from the excrement of pigeons that roosted in the broken window casing and wall of her rented apartment. Schuman's efforts to get her landlords to repair the apartment failed, and after she suffered a near fatal relapse of the sickness, she and her mother sued them for negligence, breach of implied warranty of habitability, and nuisance. *Id.* at 356. The court of appeals affirmed the trial court's dismissal of Schuman's claim as time-barred under Indiana's two-year statute of limitations for personal injury. While the Supreme Court of Indiana agreed that the portion of Schuman's complaint that sought relief for personal injury

arising from the breach of an oral contract was properly characterized as a tort claim and thus was barred, it refused to put all of her claims in the tort basket. *Id.* at 356. Specifically, the court reasoned that "[s]everal of her contentions sound like a contact claim. Since a lease is a contract, the essence of the landlord-tenant relationship is contractual in nature. Schuman's warranty claim, for example, stems from the oral month-to-month lease between tenant Schuman and landlord Kobets. Thus, this claim is governed by" the six-year statute of limitations for oral contracts found in Ind. Code § 34-1-2-1. *Id.*

*Schuman* followed the lead of the court's earlier decision in *Lawyers Title Insurance Corp. v. Pokraka*, where a title company's failure properly to record a purchase money mortgage had the effect of making Pokraka's interest in the property junior to a subsequent mortgage. 595 N.E.2d at 246. The court in *Lawyers Title* rejected an expansive reading of *Whitehouse*, which the court limited to the attorney malpractice area, and instead held that Pokraka's claim relating to her security interest in the property was covered by the six-year limitation period for fraud and breach of oral contract. *Id.* at 247.

Our holding in this case is also supported by many Indiana appeals court decisions as well as decisions of the lower federal courts that have refused to apply the two-year tort statute of limitations to actions that arise in the context of a contract. See, *e.g.*, *Orem v. Ivy Tech State Coll.*, 711 N.E.2d 864, 868 (Ind. Ct. App. 1999) (employer's breach of specific provision in written agreement gives rise to claim for breach of contract); *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1249 (Ind. Ct. App. 1998) ("Wells does not appear to allege any duty that was owed to him outside of that duty arising out of his contractual relationship with the Bank, and he appears to allege no breach of that duty other than the Bank's failure to perform the contracted-for-service. His action should not

be completely barred on the ground that it is essentially a tort claim."); *Sheridan Health Care Ctr. Inc. v. Centennial Healthcare Corp.*, No. IP01-0186-C-M/S, 2001 WL 1029111, \*8 (S.D. Ind. June 19, 2001) ("In the current circumstances, where two corporate entities have entered into a contract that defines the rights and duties of the parties, when one party alleges the other has failed to perform a duty in the contract, the party is claiming a breach, not an independent tort that arises from the relationship between the parties.").

It is true that there are other decisions of the lower Indiana courts that point in the opposite direction. See, *e.g.*, *INS Investigation Bureau, Inc. v. Lee*, *supra*; *Raquet v. Thompson*, 693 N.E.2d 969 (Ind. Ct. App. 1998); *Strayer v. Covington Creek Condominium Assoc.*, 678 N.E.2d 1286 (Ind. Ct. App. 1997). If the decisions of the lower courts pointed consistently toward a different resolution of the precise question before us, our task would be more difficult. But they do not, and we must bear in mind that our ultimate responsibility is to decide this case as we think the Supreme Court of Indiana would rule. We are not bound to follow the decisions of the lower Indiana courts except insofar as they serve as a good predictor of how the Supreme Court of Indiana might decide the question. *Cf. Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 632-33 (7th Cir. 2002) (holding federal courts must attempt to predict how state supreme court would decide question in absence of controlling precedent and in doing so are not bound by conflicting lower court precedents); see also *Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d at 417. But when the decisions of the Indiana courts point in different directions, as is the case here, it is our job to look for other reliable predictors of how the state's highest court would rule on this issue.

The best predictors, in our view, come from the court's own jurisprudence in this area, especially *Lawyers Title*

and *Schuman*. Lewis and Methodist Hospital enjoyed a relationship solely on the basis of their contractual agreement. Absent the Agreement, Methodist owed Lewis nothing. Bearing in mind the Supreme Court of Indiana's admonition not to collapse all contract claims into tort, we conclude that under prevailing Indiana law Lewis's first count in his complaint against Methodist Hospital seeks relief for breach of contract and is thus governed by the ten-year statute of limitations. In reaching this conclusion, we suggest nothing about the merits of Lewis's claim against the Hospital. See *Schuman*, 716 N.E.2d at 357.

### III

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings on Lewis's claim for breach of contract.

A true Copy:

  Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*